# ZANT, WARDEN v. STEPHENS

No. 81–89.   Argued February 24, 1982—Question certified May 3, 1982—
Decided June 22, 1983

STEVENS, J., delivered the opinion of the Court, in which BURGER, C. J., and BLACKMUN, POWELL, and O'CONNOR, JJ., joined. WHITE, J., filed an opinion concurring in part and concurring in the judgment,

864

*post*, p. 891.  REHNQUIST, J., filed an opinion concurring in the judgment, *post*, p. 893.  MARSHALL, J., filed a dissenting opinion, in which BRENNAN, J., joined, *post*, p. 904.

After the Georgia Supreme Court's response to the certified question, supplemental briefs were filed by *Michael J. Bowers*, Attorney General of Georgia, *William B. Hill, Jr.*, Senior Assistant Attorney General, *Robert S. Stubbs II*, Executive Assistant Attorney General, and *Marion O. Gordon*, First Assistant Attorney General, for petitioner, and by *James C. Bonner, Jr., Jack Greenberg, James M. Nabrit III, Joel Berger, John Charles Boger, Deborah Fins*, and *Anthony G. Amsterdam* for respondent.

JUSTICE STEVENS delivered the opinion of the Court.

The question presented is whether respondent's death penalty must be vacated because one of the three statutory aggravating circumstances found by the jury was subsequently held to be invalid by the Supreme Court of Georgia, although the other two aggravating circumstances were specifically upheld.  The answer depends on the function of the jury's finding of an aggravating circumstance under Georgia's capital sentencing statute, and on the reasons that the aggravating circumstance at issue in this particular case was found to be invalid.

In January 1975 a jury in Bleckley County, Georgia, convicted respondent of the murder of Roy Asbell and sentenced him to death.  The evidence received at the guilt phase of his trial, which included his confessions and the testimony of a number of witnesses, described these events: On August 19, 1974, while respondent was serving sentences for several burglary convictions and was also awaiting trial for escape, he again escaped from the Houston County Jail.  In the next two days he committed two auto thefts, an armed robbery, and several burglaries.  On August 21st, Roy Asbell interrupted respondent and an accomplice in the course of burglarizing the home of Asbell's son in Twiggs County.  Re-

spondent beat Asbell, robbed him, and, with the aid of the accomplice, drove him in his own vehicle a short distance into Bleckley County. There they killed Asbell by shooting him twice through the ear at point blank range.

At the sentencing phase of the trial the State relied on the evidence adduced at the guilt phase and also established that respondent's prior criminal record included convictions on two counts of armed robbery, five counts of burglary, and one count of murder. Respondent testified that he was "sorry" and knew he deserved to be punished, that his accomplice actually shot Asbell, and that they had both been "pretty high" on drugs. The State requested the jury to impose the death penalty and argued that the evidence established the aggravating circumstances identified in subparagraphs (b)(1), (b)(7), and (b)(9) of the Georgia capital sentencing statute.[1]

The trial judge instructed the jury that under the law of Georgia "every person [found] guilty of Murder shall be punished by death or by imprisonment for life, the sentence to be fixed by the jury trying the case." App. 18. He explained that the jury was authorized to consider all of the evidence

---

[1] Georgia Code § 27–2534.1(b) (1978) provided, in part:

"In all cases of other offenses for which the death penalty may be authorized, the judge shall consider, or he shall include in his instructions to the jury for it to consider, any mitigating circumstances or aggravating circumstances otherwise authorized by law and any of the following statutory aggravating circumstances which may be supported by the evidence:

"(1) The offense of murder, rape, armed robbery, or kidnapping was committed by a person with a prior record of conviction for a capital felony, or the offense of murder was committed by a person who has a substantial history of serious assaultive criminal convictions.

.        .        .        .        .

"(7) The offense of murder, rape, armed robbery, or kidnapping was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim.

.        .        .        .        .

"(9) The offense of murder was committed by a person in, or who has escaped from, the lawful custody of a peace officer or place of lawful confinement."

received during the trial as well as all facts and circumstances presented in extenuation, mitigation, or aggravation during the sentencing proceeding. He then stated:

"You may consider any of the following statutory aggravating circumstances which you find are supported by the evidence. One, the offense of Murder was committed by a person with a prior record of conviction for a Capital felony, or the offense of Murder was committed by a person who has a substantial history of serious assaultive criminal convictions. Two, the offense of Murder was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind or an aggravated battery to the victim. Three, the offense of Murder was committed by a person who has escaped from the lawful custody of a peace officer or place of lawful confinement. These possible statutory circumstances are stated in writing and will be out with you during your deliberations on the sentencing phase of this case. They are in writing here, and I shall send this out with you. If the jury verdict on sentencing fixes punishment at death by electrocution you shall designate in writing, signed by the foreman, the aggravating circumstances or circumstance which you found to have been proven beyond a reasonable doubt. Unless one or more of these statutory aggravating circumstances are proven beyond a reasonable doubt you will not be authorized to fix punishment at death." [2]

The jury followed the court's instruction and imposed the death penalty. It designated in writing that it had found the aggravating circumstances described as "One" and "Three" in the judge's instruction. [3] It made no such finding with re-

---

[2] The instruction to the sentencing jury, App. 18–19, is quoted in full in our opinion in *Zant* v. *Stephens*, 456 U. S. 410, 412–413, n. 1 (1982).

[3] The jury made the following special findings:

"(1) The offense of Murder was committed by a person with a prior record of conviction for a capital felony. The offense of Murder was committed by

spect to "Two."[4]   It should be noted that the jury's finding under "One" encompassed both alternatives identified in the judge's instructions and in subsection (b)(1) of the statute—that respondent had a prior conviction of a capital felony and that he had a substantial history of serious assaultive convictions.   These two alternatives and the finding that the murder was committed by an escapee are described by the parties as the three aggravating circumstances found by the jury, but they may also be viewed as two statutory aggravating circumstances, one of which rested on two grounds.

In his direct appeal to the Supreme Court of Georgia respondent did not challenge the sufficiency of the evidence supporting the aggravating circumstances found by the jury. Nor did he argue that there was any infirmity in the statutory definition of those circumstances.   While his appeal was pending, however, the Georgia Supreme Court held in *Arnold* v. *State*, 236 Ga. 534, 539–542, 224 S. E. 2d 386, 391–392 (1976), that the aggravating circumstance described in the second clause of (b)(1)—"a substantial history of serious assaultive criminal convictions"—was unconstitutionally vague.[5]   Because such a finding had been made by the jury in this case, the Georgia Supreme Court, on its own motion,

---

a person who has a substantial history of serious assaultive criminal convictions.    (2) The offense of Murder was committed by a person who has escaped from the lawful custody of a peace officer and place of lawful confinement."   App. 23.

[4] Thus, this case does not implicate our holding in *Godfrey* v. *Georgia*, 446 U. S. 420 (1980), that the (b)(7) aggravating circumstance as construed by the Georgia Supreme Court was unconstitutionally broad and vague.

[5] The defendant in *Arnold* had been sentenced to death by a jury which found no other aggravating circumstance.   On appeal, he contended that the language of the clause "does not provide the sufficiently 'clear and objective standards' necessary to control the jury's discretion in imposing the death penalty.   *Coley* v. *State*, [231 Ga. 829, 834, 204 S. E. 2d 612, 615 (1974)]; Furman v. Georgia, 408 U. S. 238 (1971)."   The Georgia Supreme Court agreed that the statutory language was too vague and nonspecific to be applied evenhandedly by a jury.   236 Ga., at 540–542, 224 S. E. 2d, at 391–392.

considered whether it impaired respondent's death sentence. It concluded that the two other aggravating circumstances adequately supported the sentence. *Stephens* v. *State*, 237 Ga. 259, 261–262, 227 S. E. 2d 261, 263, cert. denied, 429 U. S. 986 (1976). The state court reaffirmed this conclusion in a subsequent appeal from the denial of state habeas corpus relief. *Stephens* v. *Hopper*, 241 Ga. 596, 603–604, 247 S. E. 2d 92, 97–98, cert. denied, 439 U. S. 991 (1978).[6]

After the Federal District Court had denied a petition for habeas corpus, the United States Court of Appeals for the Fifth Circuit considered two constitutional challenges to respondent's death sentence. 631 F. 2d 397 (1980). That court first rejected his contention that the jury was not adequately instructed that it was permitted to impose life imprisonment rather than the death penalty even if it found an aggravating circumstance.[7] The court then held, however, that the death penalty was invalid because one of the aggravating circumstances found by the jury was later held unconstitutional.

The Court of Appeals gave two reasons for that conclusion. First, it read *Stromberg* v. *California*, 283 U. S. 359 (1931), as requiring that a jury verdict based on multiple grounds be set aside if the reviewing court cannot ascertain

---

[6] In his state habeas petition, respondent unsuccessfully challenged the aggravating circumstance that he had a prior conviction for a capital felony. He was admittedly under such a conviction at the time of his trial in this case, but not at the time of the murder. The Supreme Court of Georgia interpreted the statute, Ga. Code § 27–2534.1(b)(1) (1978), as referring to the defendant's record at the time of sentencing. Accordingly, respondent's contention was rejected. 241 Ga., at 602–603, 247 S. E. 2d, at 96–97. Respondent renewed his challenge to that aggravating circumstance in his federal habeas petition, but the Court of Appeals correctly recognized that it had no authority to question the Georgia Supreme Court's interpretation of state law. 631 F. 2d 397, 405 (CA5 1980). The contention is not renewed here.

[7] *Id.*, at 404–405. This aspect of the Court of Appeals' decision is not before us.

whether the jury relied on an unconstitutional ground. The court concluded:

"It is impossible for a reviewing court to determine satisfactorily that the verdict in this case was not decisively affected by an unconstitutional statutory aggravating circumstance. The jury had the authority to return a life sentence even if it found statutory aggravating circumstances. It is possible that even if the jurors believed that the other aggravating circumstances were established, they would not have recommended the death penalty but for the decision that the offense was committed by one having a substantial history of serious assaultive criminal convictions, an invalid ground." 631 F. 2d, at 406.

Second, it believed that the presence of the invalid circumstance "made it possible for the jury to consider several prior convictions of [respondent] which otherwise would not have been before it." *Ibid.*

In a petition for rehearing, the State pointed out that the evidence of respondent's prior convictions would have been admissible at the sentencing hearing even if it had not relied on the invalid circumstance.[8] The Court of Appeals then modified its opinion by deleting its reference to the possibility that the jury had relied on inadmissible evidence. 648 F. 2d 446 (1981). It maintained, however, that the reference in the instructions to the invalid circumstance "may have unduly directed the jury's attention to his prior convictions." *Ibid.* The court concluded: "It cannot be determined with the degree of certainty required in capital cases that the instruction did not make a critical difference in the jury's decision to impose the death penalty." *Ibid.*

---

[8] Ga. Code § 27–2503(a) (1978); 241 Ga., at 603–604, 247 S. E. 2d, at 97–98; see *infra,* at 886–887.

We granted Warden Zant's petition for certiorari, 454 U. S. 814 (1981). The briefs on the merits revealed that different state appellate courts have reached varying conclusions concerning the significance of the invalidation of one of multiple aggravating circumstances considered by a jury in a capital case.[9]  Although the Georgia Supreme Court had consistently stated that the failure of one aggravating circumstance does not invalidate a death sentence that is otherwise adequately supported,[10] we concluded that an exposition of the state-law premises for that view would assist in framing the precise federal constitutional issues presented by the Court of Appeals' holding.  We therefore sought guidance from the Georgia Supreme Court pursuant to Georgia's statutory certification procedure.  Ga. Code § 24–4536 (Supp. 1980).  *Zant* v. *Stephens*, 456 U. S. 410 (1982).[11]

In its response to our certified question, the Georgia Supreme Court first distinguished *Stromberg* as a case in which the jury might have relied exclusively on a single invalid ground, noting that the jury in this case had expressly relied on valid and sufficient grounds for its verdict.  The court then explained the state-law premises for its treatment of aggravating circumstances by analogizing the entire body of Georgia law governing homicides to a pyramid.  It explained:

"All cases of homicide of every category are contained within the pyramid.  The consequences flowing to the

---

[9] Brief for Respondent 40–45; Brief for State of Alabama et al. as *Amici Curiae* 13–15.

[10] 456 U. S., at 414; cf. *Gregg* v. *Georgia*, 428 U. S. 153, 201, n. 53 (1976) (noting cases in which the Georgia Supreme Court had not explicitly relied on one of several aggravating circumstances when it upheld the death sentence).

[11] We certified the following question:

"What are the premises of state law that support the conclusion that the death sentence in this case is not impaired by the invalidity of one of the statutory aggravating circumstances found by the jury?" 456 U. S., at 416–417.

perpetrator increase in severity as the cases proceed from the base to the apex, with the death penalty applying only to those few cases which are contained in the space just beneath the apex. To reach that category a case must pass through three planes of division between the base and the apex.

"The first plane of division above the base separates from all homicide cases those which fall into the category of murder. This plane is established by the legislature in statutes defining terms such as murder, voluntary manslaughter, involuntary manslaughter, and justifiable homicide. In deciding whether a given case falls above or below this plane, the function of the trier of facts is limited to finding facts. The plane remains fixed unless moved by legislative act.

"The second plane separates from all murder cases those in which the penalty of death is a possible punishment. This plane is established by statutory definitions of aggravating circumstances. The function of the factfinder is again limited to making a determination of whether certain facts have been established. Except where there is treason or aircraft hijacking, a given case may not move above this second plane unless at least one statutory aggravating circumstance exists. Code Ann. § 27–2534.1(c).

"The third plane separates, from all cases in which a penalty of death may be imposed, those cases in which it shall be imposed. There is an absolute discretion in the factfinder to place any given case below the plane and not impose death. The plane itself is established by the factfinder. In establishing the plane, the factfinder considers all evidence in extenuation, mitigation and aggravation of punishment. Code Ann. § 27–2503 and § 27–2534.1. There is a final limitation on the imposition of the death penalty resting in the automatic appeal procedure: This court determines whether the penalty of death was imposed under the influence of passion, preju-

dice, or any other arbitrary factor; whether the statutory aggravating circumstances are supported by the evidence; and whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases. Code Ann. § 27–2537. Performance of this function may cause this court to remove a case from the death penalty category but can never have the opposite result.

"The purpose of the statutory aggravating circumstances is to limit to a large degree, but not completely, the factfinder's discretion. Unless at least one of the ten statutory aggravating circumstances exists, the death penalty may not be imposed in any event. If there exists at least one statutory aggravating circumstance, the death penalty may be imposed but the factfinder has a discretion to decline to do so without giving any reason. *Waters* v. *State*, 248 Ga. 355, 369, 283 S. E. 2d 238 (1981); *Hawes* v. *State*, 240 Ga. 327, 334, 240 S. E. 2d 833 (1977); *Fleming* v. *State*, 240 Ga. 142, 240 S. E. 2d 37 1977). In making the decision as to the penalty, the factfinder takes into consideration all circumstances before it from both the guilt-innocence and the sentence phases of the trial. These circumstances relate both to the offense and the defendant.

"A case may not pass the second plane into that area in which the death penalty is authorized unless at least one statutory aggravating circumstance is found. However, this plane is passed regardless of the number of statutory aggravating circumstances found, so long as there is at least one. Once beyond this plane, the case enters the area of the factfinder's discretion, in which all the facts and circumstances of the case determine, in terms of our metaphor, whether or not the case passes the third plane and into the area in which the death penalty is imposed." 250 Ga. 97, 99–100, 297 S. E. 2d 1, 3–4 (1982).

The Georgia Supreme Court then explained why the failure of the second ground of the (b)(1) statutory aggravating circumstance did not invalidate respondent's death sentence. It first noted that the evidence of respondent's prior convictions had been properly received and could properly have been considered by the jury. The court expressed the opinion that the mere fact that such evidence was improperly designated "statutory" had an "inconsequential impact" on the jury's death penalty decision. Finally, the court noted that a different result might be reached if the failed circumstance had been supported by evidence not otherwise admissible or if there was reason to believe that, because of the failure, the sentence was imposed under the influence of an arbitrary factor. *Id.*, at 100, 297 S. E. 2d, at 4.

We are indebted to the Georgia Supreme Court for its helpful response to our certified question. That response makes it clear that we must confront three separate issues in order to decide this case. First, does the limited purpose served by the finding of a statutory aggravating circumstance in Georgia allow the jury a measure of discretion that is forbidden by *Furman* v. *Georgia*, 408 U. S. 238 (1972), and subsequent cases? Second, has the rule of *Stromberg* v. *California*, 283 U. S. 359 (1931), been violated? Third, in this case, even though respondent's prior criminal record was properly admitted, does the possibility that the reference to the invalid statutory aggravating circumstance in the judge's instruction affected the jury's deliberations require that the death sentence be set aside? We discuss these issues in turn.

## I

In Georgia, unlike some other States,[12] the jury is not instructed to give any special weight to any aggravating cir-

---

[12] See, *e. g.*, *Williams* v. *State*, 274 Ark. 9, 10, 621 S. W. 2d 686, 687 (1981); *State* v. *Irwin*, 304 N. C. 93, 107–108, 282 S. E. 2d 439, 448–449

cumstance, to consider multiple aggravating circumstances any more significant than a single such circumstance, or to balance aggravating against mitigating circumstances pursuant to any special standard. Thus, in Georgia, the finding of an aggravating circumstance does not play any role in guiding the sentencing body in the exercise of its discretion, apart from its function of narrowing the class of persons convicted of murder who are eligible for the death penalty. For this reason, respondent argues that Georgia's statutory scheme is invalid under the holding in *Furman* v. *Georgia*.

A fair statement of the consensus expressed by the Court in *Furman* is that "where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Gregg* v. *Georgia*, 428 U. S. 153, 189 (1976) (opinion of Stewart, POWELL, and STEVENS, JJ.). After thus summarizing the central mandate of *Furman*, the joint opinion in *Gregg* set forth a general exposition of sentencing procedures that would satisfy the concerns of *Furman*. 428 U. S., at 189–195. But it expressly stated: "We do not intend to suggest that only the above-described procedures would be permissible under *Furman* or that any sentencing system constructed along these

---

(1981); *State* v. *Moore*, 614 S. W. 2d 348, 351–352 (Tenn. 1981); *Hopkinson* v. *State*, 632 P. 2d 79, 90, n. 1, 171–172 (Wyo. 1981). In each of these cases, the State Supreme Court set aside a death sentence based on both valid and invalid aggravating circumstances. Respondent advances these cases in support of his contention that a similar result is required here. However, examination of the relevant state statutes shows that in each of these States, not only must the jury find at least one aggravating circumstance in order to have the power to impose the death sentence; in addition, the law requires the jury to weigh the aggravating circumstances against the mitigating circumstances when it decides whether or not the death penalty should be imposed. See Ark. Stat. Ann. § 41–1302(1) (1977); N. C. Gen. Stat. § 15A–2000(b) (1978); Tenn. Code Ann. § 39–2–203(g) (1982); Wyo. Stat. § 6–2–102(d)(i) (1983).

general lines would inevitably satisfy the concerns of *Furman*, for each distinct system must be examined on an individual basis." *Id.*, at 195. The opinion then turned to specific consideration of the constitutionality of Georgia's capital sentencing procedures. *Id.*, at 196–207.

Georgia's scheme includes two important features which the joint opinion described in its general discussion of sentencing procedures that would guide and channel the exercise of discretion. Georgia has a bifurcated procedure, see *id.*, at 190–191, and its statute also mandates meaningful appellate review of every death sentence, see *id.*, at 195. The statute does not, however, follow the Model Penal Code's recommendation that the jury's discretion in weighing aggravating and mitigating circumstances against each other should be governed by specific standards. See *id.*, at 193. Instead, as the Georgia Supreme Court has unambiguously advised us, the aggravating circumstance merely performs the function of narrowing the category of persons convicted of murder who are eligible for the death penalty.

Respondent argues that the mandate of *Furman* is violated by a scheme that permits the jury to exercise unbridled discretion in determining whether the death penalty should be imposed after it has found that the defendant is a member of the class made eligible for that penalty by statute. But that argument could not be accepted without overruling our specific holding in *Gregg*. For the Court approved Georgia's capital sentencing statute even though it clearly did not channel the jury's discretion by enunciating specific standards to guide the jury's consideration of aggravating and mitigating circumstances.[18]

---

[18] The joint opinion specifically described the Georgia scheme in these terms:

"Georgia did act, however, to narrow the class of murderers subject to capital punishment by specifying 10 statutory aggravating circumstances, one of which must be found by the jury to exist beyond a reasonable doubt before a death sentence can ever be imposed. In addition, the jury is au-

The approval of Georgia's capital sentencing procedure rested primarily on two features of the scheme: that the jury was required to find at least one valid statutory aggravating circumstance and to identify it in writing, and that the State Supreme Court reviewed the record of every death penalty proceeding to determine whether the sentence was arbitrary or disproportionate. These elements, the opinion concluded, adequately protected against the wanton and freakish imposition of the death penalty.[14] This conclusion rested, of course, on the fundamental requirement that each statutory aggravating circumstance must satisfy a constitutional standard derived from the principles of *Furman* itself. For a sys-

thorized to consider any other appropriate aggravating or mitigating circumstances. § 27–2534.1(b) (Supp. 1975). The jury is not required to find any mitigating circumstance in order to make a recommendation of mercy that is binding on the trial court, see § 27–2302 (Supp. 1975), but it must find a *statutory* aggravating circumstance before recommending a sentence of death." 428 U. S., at 196–197; see also *id.*, at 161, 165, 206–207. Cf. *id.*, at 208, 218, 222 (opinion of WHITE, J., concurring in judgment).

The joint opinion issued the same day in *Jurek* v. *Texas*, 428 U. S. 262 (1976), makes clear that specific standards for balancing aggravating against mitigating circumstances are not constitutionally required. In *Jurek* we held that the State's action in "narrowing the categories of murders for which a death sentence may ever be imposed" served much the same purpose as the lists of statutory aggravating circumstances that Georgia and Florida had adopted. *Id.*, at 270. We also held that one of the three questions presented to the sentencing jury permitted the defendant to bring mitigating circumstances to the jury's attention. *Id.*, at 273–274. Thus, in Texas, aggravating and mitigating circumstances were not considered at the same stage of the criminal prosecution and certainly were not explicitly balanced against each other.

[14] "While the jury is permitted to consider any aggravating or mitigating circumstances, it must find and identify at least one statutory aggravating factor before it may impose a penalty of death. In this way the jury's discretion is channeled. No longer can a jury wantonly and freakishly impose the death sentence; it is always circumscribed by the legislative guidelines. In addition, the review function of the Supreme Court of Georgia affords additional assurance that the concerns that prompted our decision in *Furman* are not present to any significant degree in the Georgia procedure applied here." 428 U. S., at 206–207.

tem "could have standards so vague that they would fail adequately to channel the sentencing decision patterns of juries with the result that a pattern of arbitrary and capricious sentencing like that found unconstitutional in *Furman* could occur." 428 U. S., at 195, n. 46. To avoid this constitutional flaw, an aggravating circumstance must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.[15]

---

[15] These standards for statutory aggravating circumstances address the concerns voiced by several of the opinions in *Furman* v. *Georgia.* See 408 U. S., at 248, n. 11 (Douglas, J., concurring); *id.*, at 294 (BRENNAN, J., concurring) ("it is highly implausible that only the worst criminals or the criminals who commit the worst crimes are selected for this punishment"); *id.*, at 309–310 (Stewart, J., concurring) ("of all the people convicted of rapes and murders in 1967 and 1968, many just as reprehensible as these, the petitioners are among a capriciously selected random handful upon whom the sentence of death has in fact been imposed"); *id.*, at 313 (WHITE, J., concurring) ("there is no meaningful basis for distinguishing the few cases in which it is imposed from the many cases in which it is not").

In *Gregg*, the joint opinion again recognized the need for legislative criteria to limit the death penalty to certain crimes: "[T]he decision that capital punishment may be the appropriate sanction in extreme cases is an expression of the community's belief that certain crimes are themselves so grievous an affront to humanity that the only adequate response may be the penalty of death." 428 U. S., at 184. The opinion also noted with approval the efforts of legislatures to "define those crimes and those criminals for which capital punishment is most probably an effective deterrent." *Id.*, at 186. The opinion of JUSTICE WHITE concurring in the judgment in *Gregg* asserted that, over time, as the aggravating circumstance requirement was applied, "the types of murders for which the death penalty may be imposed [would] become more narrowly defined and [would be] limited to those which are particularly serious or for which the death penalty is peculiarly appropriate." *Id.*, at 222. Cf. *Roberts (Harry)* v. *Louisiana,* 431 U. S. 633, 636 (1977) (the State may consider as an aggravating circumstance the fact that the murder victim was a peace officer performing his regular duties, because there is "a special interest in affording protection to those public servants who regularly must risk their lives in order to guard the safety of other persons and property").

Thus in *Godfrey* v. *Georgia*, 446 U. S. 420 (1980), the Court struck down an aggravating circumstance that failed to narrow the class of persons eligible for the death penalty. Justice Stewart's opinion for the plurality concluded that the aggravating circumstance described in subsection (b)(7) of the Georgia statute, as construed by the Georgia Supreme Court, failed to create any "inherent restraint on the arbitrary and capricious infliction of the death sentence," because a person of ordinary sensibility could find that almost every murder fit the stated criteria. *Id.*, at 428–429.[16] Moreover, the facts of the case itself did not distinguish the murder from any other murder. The plurality concluded that there was "no principled way to distinguish this case, in which the death penalty was imposed, from the many in which it was not." *Id.*, at 433.

Our cases indicate, then, that statutory aggravating circumstances play a constitutionally necessary function at the stage of legislative definition: they circumscribe the class of persons eligible for the death penalty. But the Constitution does not require the jury to ignore other possible aggravating factors in the process of selecting, from among that class, those defendants who will actually be sentenced to death.[17]

---

[16] This Court's conclusion in *Godfrey* was analogous to the Georgia Supreme Court's holding in *Arnold* v. *State* that the second clause of the (b)(1) aggravating circumstance, which is at issue in this case, was "too vague and nonspecific to be applied evenhandedly by a jury." 236 Ga., at 541, 224 S. E. 2d, at 391. The defendant in that case, who had two prior convictions, had been sentenced to death by the jury solely on a finding that he had a "'substantial history' of 'serious assaultive criminal convictions.'" The court concluded that the words "substantial history" were so highly subjective as to be unconstitutional. *Id.*, at 542, 224 S. E. 2d, at 392; see n. 5, *supra*. That aggravating circumstance, in the view of the Georgia Supreme Court, did not provide a principled basis for distinguishing Arnold's case from the many other murder cases in which the death penalty was not imposed under the statute.

[17] See *Gregg*, 428 U. S., at 164, 196–197, 206; *Proffitt* v. *Florida*, 428 U. S. 242, 256–257, n. 14 (1976) (opinion of Stewart, POWELL, and STEVENS, JJ.). Similarly, the Model Penal Code draft discussed in *Gregg*,

What is important at the selection stage is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime. See *Eddings* v. *Oklahoma*, 455 U. S. 104, 110–112 (1982); *Lockett* v. *Ohio*, 438 U. S. 586, 601–605 (1978) (plurality opinion); *Roberts (Harry)* v. *Louisiana*, 431 U. S. 633, 636–637 (1977); *Gregg*, 428 U. S., at 197 (opinion of Stewart, POWELL, and STEVENS, JJ.); *Proffitt* v. *Florida*, 428 U. S., at 251–252 (opinion of Stewart, POWELL, and STEVENS, JJ.); *Woodson* v. *North Carolina*, 428 U. S. 280, 303–304 (1976) (plurality opinion).[18]

The Georgia scheme provides for categorical narrowing at the definition stage, and for individualized determination and appellate review at the selection stage. We therefore remain convinced, as we were in 1976, that the structure of the statute is constitutional. Moreover, the narrowing function has been properly achieved in this case by the two valid aggravating circumstances upheld by the Georgia Supreme Court—that respondent had escaped from lawful confinement, and that he had a prior record of conviction for a capital felony. These two findings adequately differentiate this case in an objective, evenhanded, and substantively rational way from the many Georgia murder cases in which the death penalty may not be imposed. Moreover, the Georgia Supreme Court in this case reviewed the death sentence to determine whether it was arbitrary, excessive, or dispropor-

---

*supra*, at 192–195, sets forth lists of aggravating and mitigating circumstances but also provides that the sentencer "shall take into account . . . any other facts that it deems relevant . . . ." ALI, Model Penal Code § 201.6 (Prop. Off. Draft, 1962).

A State is, of course, free to decide as a matter of state law to limit the evidence of aggravating factors that the prosecution may offer at the sentencing hearing. A number of States do not permit the sentencer to consider aggravating circumstances other than those enumerated in the statute. See Gillers, Deciding Who Dies, 129 U. Pa. L. Rev. 1, 101–119 (1980); see, *e. g.*, Ark. Stat. Ann. § 41–1301(4) (1977); 42 Pa. Cons. Stat. § 9711(a)(2) (1980).

[18] See Gillers, *supra* n. 17, at 26–27.

tionate.[19]   Thus the absence of legislative or court-imposed standards to govern the jury in weighing the significance of either or both of those aggravating circumstances does not render the Georgia capital sentencing statute invalid as applied in this case.

## II

Respondent contends that under the rule of *Stromberg* v. *California*, 283 U. S. 359 (1931), and subsequent cases, the invalidity of one of the statutory aggravating circumstances underlying the jury's sentencing verdict requires that its entire death sentence be set aside.   In order to evaluate this contention, it is necessary to identify two related but different rules that have their source in the *Stromberg* case.

In *Stromberg*, a member of the Communist Party was convicted of displaying a red flag in violation of the California Penal Code.   The California statute prohibited such a display (1) as a "sign, symbol or emblem" of opposition to organized government; (2) as an invitation or stimulus to anarchistic action; or (3) as an aid to seditious propaganda.   This Court held that the first clause of the statute was repugnant to the Federal Constitution and found it unnecessary to pass on the validity of the other two clauses because the jury's guilty verdict might have rested exclusively on a conclusion that Stromberg had violated the first.   The Court explained:

---

[19] The Georgia Supreme Court conducts an independent review of the propriety of the sentence even when the defendant has not specifically raised objections at trial.   See *Stephens* v. *State*, 237 Ga. 259, 260, 227 S. E. 2d 261, 262, cert. denied, 429 U. S. 986 (1976).   In this case, the Georgia Supreme Court explained:

"In performing the sentence comparison required by Code Ann. § 27–2537(c)(3), this court uses for comparison purposes not only similar cases in which death was imposed, but similar cases in which death was not imposed." 237 Ga., at 262, 227 S. E. 2d, at 263.

As an appendix to the opinion it provided a list of the similar cases it had considered, as the statute requires.   *Id.*, at 263, 227 S. E. 2d, at 264.   See also *Ross* v. *State*, 233 Ga. 361, 364–367, 211 S. E. 2d 356, 358–360 (1974); *Tucker* v. *State*, 245 Ga. 68, 74, 263 S. E. 2d 109, 113 (1980).

"The verdict against the appellant was a general one. It did not specify the ground upon which it rested. As there were three purposes set forth in the statute, and the jury were instructed that their verdict might be given with respect to any one of them, independently considered, it is impossible to say under which clause of the statute the conviction was obtained. If any one of these clauses, which the state court has held to be separable, was invalid, it cannot be determined upon this record that the appellant was not convicted under that clause." *Id.*, at 367–368.

"The first clause of the statute being invalid upon its face, the conviction of the appellant, which so far as the record discloses may have rested upon that clause exclusively, must be set aside." *Id.*, at 369–370.

One rule derived from the *Stromberg* case is that a general verdict must be set aside if the jury was instructed that it could rely on any of two or more independent grounds, and one of those grounds is insufficient, because the verdict may have rested exclusively on the insufficient ground. The cases in which this rule has been applied all involved general verdicts based on a record that left the reviewing court uncertain as to the actual ground on which the jury's decision rested. See, *e. g.*, *Williams* v. *North Carolina*, 317 U. S. 287, 292 (1942); *Cramer* v. *United States*, 325 U. S. 1, 36, n. 45 (1945); *Terminiello* v. *Chicago*, 337 U. S. 1, 5–6 (1949); *Yates* v. *United States*, 354 U. S. 298, 311–312 (1957). This rule does not require that respondent's death sentence be vacated, because the jury did not merely return a general verdict stating that it had found at least one aggravating circumstance. The jury expressly found aggravating circumstances that were valid and legally sufficient to support the death penalty.

The second rule derived from the *Stromberg* case is illustrated by *Thomas* v. *Collins*, 323 U. S. 516, 528–529 (1945), and *Street* v. *New York*, 394 U. S. 576, 586–590 (1969). In

those cases we made clear that the reasoning of *Stromberg* encompasses a situation in which the general verdict on a single-count indictment or information rested on *both* a constitutional and an unconstitutional ground. In *Thomas* v. *Collins*, a labor organizer's contempt citation was predicated both upon a speech expressing a general invitation to a group of nonunion workers, which the Court held to be constitutionally protected speech, and upon solicitation of a single individual. The Court declined to consider the State's contention that the judgment could be sustained on the basis of the individual solicitation alone,[20] for the record showed that the penalty had been imposed on account of both solicitations. "The judgment therefore must be affirmed as to both or as to neither." 323 U. S., at 529. Similarly, in *Street*, the record indicated that petitioner's conviction on a single-count indictment could have been based on his protected words as well as on his arguably unprotected conduct, flag burning. We stated that, "unless the record negates the possibility that the conviction was based on both alleged violations," the judgment could not be affirmed unless both were valid. 394 U. S., at 588.

The Court's opinion in *Street* explained:

"We take the rationale of *Thomas* to be that when a single-count indictment or information charges the commission of a crime by virtue of the defendant's having done both a constitutionally protected act and one which may be unprotected, and a guilty verdict ensues without elucidation, there is an unacceptable danger that the trier of fact will have regarded the two acts as 'intertwined' and have rested the conviction on both together. See 323 U. S., at 528–529, 540–541. There is no com-

---

[20] The State neither conceded nor unequivocally denied that the sentence was imposed on account of both acts. "Nevertheless the State maintains that the invitation to O'Sullivan in itself is sufficient to sustain the judgment and sentence and that nothing more need be considered to support them." 323 U. S., at 528, n. 14.

parable hazard when the indictment or information is in several counts and the conviction is explicitly declared to rest on findings of guilt on certain of these counts, for in such instances there is positive evidence that the trier of fact considered each count on its own merits and separately from the others." *Ibid.* (footnote omitted).

The rationale of *Thomas* and *Street* applies to cases in which there is no uncertainty about the multiple grounds on which a general verdict rests. If, under the instructions to the jury, one way of committing the offense charged is to perform an act protected by the Constitution, the rule of these cases requires that a general verdict of guilt be set aside even if the defendant's unprotected conduct, considered separately, would support the verdict. It is a difficult theoretical question whether the rule of *Thomas* and *Street* applies to the Georgia death penalty scheme. The jury's imposition of the death sentence after finding more than one aggravating circumstance is not precisely the same as the jury's verdict of guilty on a single-count indictment after finding that the defendant has engaged in more than one type of conduct encompassed by the same criminal charge, because a wider range of considerations enters into the former determination. On the other hand, it is also not precisely the same as the imposition of a single sentence of imprisonment after guilty verdicts on each of several separate counts in a multiple-count indictment,[21] because the qualitatively different sentence of death is imposed only after a channeled sentencing procedure. We need not answer this question here. The second rule derived from *Stromberg*, embodied in *Thomas* and *Street*, applies only in cases in which the State has based its prosecu-

---

[21] In this situation the Court has held that the single sentence may stand, even if one or more of the counts is invalid, as long as one of the counts is valid and the sentence is within the range authorized by law. See *Claassen* v. *United States*, 142 U. S. 140 (1891); *Pinkerton* v. *United States*, 328 U. S. 640 (1946); *Barenblatt* v. *United States*, 360 U. S. 109 (1959).

tion, at least in part, on a charge that constitutionally protected activity is unlawful. No such charge was made in respondent's sentencing proceeding.

In *Stromberg, Thomas,* and *Street,* the trial courts' judgments rested, in part, on the fact that the defendant had been found guilty of expressive activity protected by the First Amendment. In contrast, in this case there is no suggestion that any of the aggravating circumstances involved any conduct protected by the First Amendment or by any other provision of the Constitution. Accordingly, even if the *Stromberg* rules may sometimes apply in the sentencing context, a death sentence supported by at least one valid aggravating circumstance need not be set aside under the second *Stromberg* rule simply because another aggravating circumstance is "invalid" in the sense that it is insufficient by itself to support the death penalty. In this case, the jury's finding that respondent was a person who has a "substantial history of serious assaultive criminal convictions" did not provide a sufficient basis for imposing the death sentence. But it raised none of the concerns underlying the holdings in *Stromberg, Thomas,* and *Street,* for it did not treat constitutionally protected conduct as an aggravating circumstance.

## III

Two themes have been reiterated in our opinions discussing the procedures required by the Constitution in capital sentencing determinations. On the one hand, as the general comments in the *Gregg* joint opinion indicated, 428 U. S., at 192–195, and as THE CHIEF JUSTICE explicitly noted in *Lockett* v. *Ohio,* 438 U. S., at 605 (plurality opinion), there can be "no perfect procedure for deciding in which cases governmental authority should be used to impose death." See also *Beck* v. *Alabama,* 447 U. S. 625, 638, n. 13 (1980). On the other hand, because there is a qualitative difference between death and any other permissible form of punishment, "there is a corresponding difference in the need for reliability

in the determination that death is the appropriate punishment in a specific case." *Woodson* v. *North Carolina*, 428 U. S., at 305. "It is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion." *Gardner* v. *Florida*, 430 U. S. 349, 358 (1977). Thus, although not every imperfection in the deliberative process is sufficient, even in a capital case, to set aside a state-court judgment, the severity of the sentence mandates careful scrutiny in the review of any colorable claim of error.

Respondent contends that the death sentence was impaired because the judge instructed the jury with regard to an invalid statutory aggravating circumstance, a "substantial history of serious assaultive criminal convictions," for these instructions may have affected the jury's deliberations. In analyzing this contention it is essential to keep in mind the sense in which that aggravating circumstance is "invalid." It is not invalid because it authorizes a jury to draw adverse inferences from conduct that is constitutionally protected. Georgia has not, for example, sought to characterize the display of a red flag, cf. *Stromberg* v. *California*, the expression of unpopular political views, cf. *Terminiello* v. *Chicago*, 337 U. S. 1 (1949), or the request for trial by jury, cf. *United States* v. *Jackson*, 390 U. S. 570 (1968), as an aggravating circumstance. Nor has Georgia attached the "aggravating" label to factors that are constitutionally impermissible or totally irrelevant to the sentencing process, such as for example the race, religion, or political affiliation of the defendant, cf. *Herndon* v. *Lowry*, 301 U. S. 242 (1937), or to conduct that actually should militate in favor of a lesser penalty, such as perhaps the defendant's mental illness. Cf. *Miller* v. *Florida*, 373 So. 2d 882, 885–886 (Fla. 1979). If the aggravating circumstance at issue in this case had been invalid for reasons such as these, due process of law would require that the jury's decision to impose death be set aside.

But the invalid aggravating circumstance found by the jury in this case was struck down in *Arnold* because the Georgia Supreme Court concluded that it fails to provide an adequate basis for distinguishing a murder case in which the death penalty may be imposed from those cases in which such a penalty may not be imposed. See nn. 5 and 16, *supra.* The underlying evidence is nevertheless fully admissible at the sentencing phase. As we noted in *Gregg*, 428 U. S., at 163, the Georgia statute provides that, at the sentencing hearing, the judge or jury

> "'shall hear additional evidence in extenuation, mitigation, and aggravation of punishment, *including the record of any prior criminal convictions and pleas of guilty or pleas of nolo contendere of the defendant*, or the absence of any prior conviction and pleas: Provided, however, that only such evidence in aggravation as the State has made known to the defendant prior to his trial shall be admissible.'" Ga. Code § 27–2503 (1975) (emphasis supplied).[22]

We expressly rejected petitioner's objection to the wide scope of evidence and argument allowed at presentence hearings.

> "We think that the Georgia court wisely has chosen not to impose unnecessary restrictions on the evidence that can be offered at such a hearing and to approve open and far-ranging argument . . . . So long as the evidence introduced and the arguments made at the presentence hearing do not prejudice a defendant, it is preferable not to impose restrictions. We think it desirable for the jury to have as much information before it as possible

---

[22] See *Fair* v. *State*, 245 Ga. 868, 873, 268 S. E. 2d 316, 321 (1980) ("Any lawful evidence which tends to show the motive of the defendant, his lack of remorse, his general moral character, and his predisposition to commit other crimes is admissible in aggravation, subject to the notice provisions of the statute").

when it makes the sentencing decision." 428 U. S., at 203–204.

See *id.*, at 206–207; see also n. 17, *supra*.

Thus, any evidence on which the jury might have relied in this case to find that respondent had previously been convicted of a substantial number of serious assaultive offenses, as he concedes he had been, was properly adduced at the sentencing hearing and was fully subject to explanation by the defendant.[23] Cf. *Gardner* v. *Florida, supra* (requiring that the defendant have the opportunity to rebut evidence and State's theory in sentencing proceeding); *Presnell* v. *Georgia,* 439 U. S. 14, 16, n. 3 (1978) (same).[24] This case involves a statutory aggravating circumstance, invalidated by the State Supreme Court on grounds of vagueness, whose terms plausibly described aspects of the defendant's background that were properly before the jury and whose accuracy was unchallenged. Hence the erroneous instruction does not im-

---

[23] "The purpose of Code Ann. § 27–2503(a) is to allow a defendant to examine his record to determine if the convictions are in fact his, if he was represented by counsel, and any other defect which would render such documents inadmissible during the pre-sentencing phase of the trial." *Herring* v. *State,* 238 Ga. 288, 290, 232 S. E. 2d 826, 828 (1977). See *Franklin* v. *State,* 245 Ga. 141, 149–150, 263 S. E. 2d 666, 671–672 (1980). As we held in *United States* v. *Tucker,* 404 U. S. 443, 447–449 (1972), even in a noncapital sentencing proceeding, the sentence must be set aside if the trial court relied at least in part on "misinformation of constitutional magnitude" such as prior uncounseled convictions that were unconstitutionally imposed. See *Townsend* v. *Burke,* 334 U. S. 736, 740–741 (1948) (reversing a sentence imposed on uncounseled defendant because it was based on "extensively and materially false" assumptions concerning the defendant's prior criminal record).

[24] Petitioner acknowledges that, if an invalid statutory aggravating circumstance were supported by material evidence not properly before the jury, a different case would be presented. Brief for Petitioner 13; Supplemental Memorandum for Petitioner 18; Tr. of Oral Arg. 14, 18–20. We need not decide in this case whether the death sentence would be impaired in other circumstances, for example, if the jury's finding of an aggravating circumstance relied on materially inaccurate or misleading information.

plicate our repeated recognition that the "qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed." *Lockett* v. *Ohio*, 438 U. S., at 604 (opinion of BURGER, C. J.).

Although the Court of Appeals acknowledged on rehearing that the evidence was admissible, it expressed the concern that the trial court's instructions "may have unduly directed the jury's attention to his prior conviction." 648 F. 2d, at 446. But, assuming that the instruction did induce the jury to place greater emphasis upon the respondent's prior criminal record than it would otherwise have done, the question remains whether that emphasis violated any constitutional right. In answering this question, it is appropriate to compare the instruction that was actually given, see *supra*, at 866, with an instruction on the same subject that would have been unobjectionable. Cf. *Henderson* v. *Kibbe*, 431 U. S. 145, 154–157 (1977). Nothing in the United States Constitution prohibits a trial judge from instructing a jury that it would be appropriate to take account of a defendant's prior criminal record in making its sentencing determination, see n. 17, *supra*, even though the defendant's prior history of noncapital convictions could not *by itself* provide sufficient justification for imposing the death sentence. There would have been no constitutional infirmity in an instruction stating, in substance: "If you find beyond a reasonable doubt that the defendant is a person who has previously been convicted of a capital felony, or that he has escaped from lawful confinement, you will be authorized to impose the death sentence, and in deciding whether or not that sentence is appropriate you may consider the remainder of his prior criminal record."

The effect the erroneous instruction may have had on the jury is therefore merely a consequence of the statutory label "aggravating circumstance." That label arguably might have caused the jury to give somewhat greater weight to respondent's prior criminal record than it otherwise would have given. But we do not think the Georgia Supreme

Court erred in its conclusion that the "mere fact that some of the aggravating circumstances presented were improperly designated 'statutory'" had "an inconsequential impact on the jury's decision regarding the death penalty." 250 Ga., at 100, 297 S. E. 2d, at 4. The instructions, see *supra*, at 866, did not place particular emphasis on the role of statutory aggravating circumstances in the jury's ultimate decision. Instead the trial court instructed the jury to "consider all of the evidence received in court throughout the trial before you" and to "consider all facts and circumstances presented in extinuation [sic], mitigation and aggravation of punishment as well as such arguments as have been presented for the State and for the Defense." App. 18. More importantly, for the reasons discussed above, any possible impact cannot fairly be regarded as a constitutional defect in the sentencing process.[25]

---

[25] The Georgia Supreme Court's affirmance of this case on direct appeal implicitly approves the jury instructions as an accurate reflection of state law. Moreover, the instructions are entirely consistent with the explanation of Georgia's statutory scheme given in the Georgia Supreme Court's response to our certified question. According to the response, see *supra*, at 872, "[u]nless at least one of the ten statutory aggravating circumstances exists, the death penalty may not be imposed in any event. If there exists at least one statutory aggravating circumstance, the death penalty may be imposed but the factfinder has a discretion to decline to do so without giving any reason. . . . In making the decision as to the penalty, the factfinder takes into consideration all circumstances before it from both the guilt-innocence and the sentence phases of the trial." 250 Ga., at 100, 297 S. E. 2d, at 3–4. This is precisely what the trial court told the jury: "Now in arriving at your determinations in this regard you are authorized to consider all of the evidence received in court throughout the trial before you. You are further authorized to consider all facts and circumstances presented in extinuation [sic], mitigation and aggravation of punishment as well as such arguments as have been presented for the State and for the Defense. . . . Unless one or more of these statutory aggravating circumstances are proven beyond a reasonable doubt you will not be authorized to fix punishment at death. . . . If you fix punishment at death by electrocution you would recite in the exact words which I have given you the one or more circumstances you found to be proven beyond a reasonable

Our decision in this case depends in part on the existence of an important procedural safeguard, the mandatory appellate review of each death sentence by the Georgia Supreme Court to avoid arbitrariness and to assure proportionality.[26] We accept that court's view that the subsequent invalidation of one of several statutory aggravating circumstances does not automatically require reversal of the death penalty, having been assured that a death sentence will be set aside if the invalidation of an aggravating circumstance makes the penalty arbitrary or capricious. 250 Ga., at 101, 297 S. E. 2d, at 4. The Georgia Supreme Court, in its response to our certified question, expressly stated: "A different result might be reached in a case where evidence was submitted in support of a statutory aggravating circumstance which was not otherwise admissible, and thereafter the circumstance failed." *Ibid.* As we noted in *Gregg*, 428 U. S., at 204–205, we have also been assured that a death sentence will be vacated if it is excessive or substantially disproportionate to the penalties that have been imposed under similar circumstances.

Finally, we note that in deciding this case we do not express any opinion concerning the possible significance of a holding that a particular aggravating circumstance is "invalid" under a statutory scheme in which the judge or jury is specifically instructed to weigh statutory aggravating and mitigating circumstances in exercising its discretion whether to impose the death penalty. See n. 12, *supra.* As we have discussed, see *supra*, at 873–880, the Constitution does not require a State to adopt specific standards for instructing the jury in its consideration of aggravating and mitigating circumstances, and Georgia has not adopted such a system.

---

doubt. . . . [If you recommend life imprisonment] it would not be necessary for you to recite any mitigating or aggravating circumstances as you may find, and you would simply state in your verdict, We fix punishment at life in prison." App. 18–19. See *Zant* v. *Stephens*, 456 U. S., at 411–412, n. 1.

[26] See n. 19, *supra.*

Under Georgia's sentencing scheme, and under the trial judge's instructions in this case, no suggestion is made that the presence of more than one aggravating circumstance should be given special weight. Whether or not the jury had concluded that respondent's prior record of criminal convictions merited the label "substantial" or the label "assaultive," the jury was plainly entitled to consider that record, together with all of the other evidence before it, in making its sentencing determination.

The judgment of the Court of Appeals is

*Reversed.*

JUSTICE WHITE, concurring in part and concurring in the judgment.

In *Claassen* v. *United States*, 142 U. S. 140 (1891), the defendant in a criminal case was found guilty on 5 of 11 counts on which the jury was instructed. The verdict was a general one and one 6-year sentence was imposed. On writ of error, this Court affirmed the conviction and sentence, saying that the first "count and the verdict of guilty returned upon it being sufficient to support the judgment and sentence, the question of the sufficiency of the other counts need not be considered." *Id.*, at 146. Similarly, in *Barenblatt* v. *United States*, 360 U. S. 109 (1959), a defendant was convicted on each of five counts, and a general sentence was imposed. The Court said, *id.*, at 115: "Since this sentence was less than the maximum punishment authorized by the statute for conviction under any one Count, the judgment below must be upheld if the conviction upon any of the Counts is sustainable" (footnote omitted). *Pinkerton* v. *United States*, 328 U. S. 640, 641, n. 1 (1946); *Whitfield* v. *Ohio*, 297 U. S. 431, 438 (1936); *Abrams* v. *United States*, 250 U. S. 616, 619 (1919); and *Evans* v. *United States*, 153 U. S. 584, 595 (1894), were similar holdings. It is therefore clear that in cases such as *Claassen* and *Barenblatt*, there is no *Stromberg, Thomas,* or *Street* problem.

Here, the jury imposing the sentence found three aggravating circumstances and based on all the evidence imposed the death sentence. One of the aggravating circumstances was found invalid on an intervening appeal in another case, and the claim is that under *Stromberg*, *Thomas*, and *Street*, the death sentence must be set aside. I agree with the Court that there is no such problem since the evidence supporting the invalid aggravating circumstance was properly before the jury. The Court, however, suggests that if the evidence had been inadmissible under the Federal Constitution, there might be a *Stromberg*, *Thomas*, or *Street* problem. The Court says, *ante*, at 883: "The jury's imposition of the death sentence after finding more than one aggravating circumstance . . . is also not precisely the same as the imposition of a single sentence of imprisonment after guilty verdicts on each of several separate counts in a multiple-count indictment, because the qualitatively different sentence of death is imposed only after a channeled sentencing procedure" (footnote omitted). The Court thus suggests that the *Claassen-Barenblatt* line of cases may not be applicable to sentencing proceedings in capital punishment cases. I fail to grasp the distinction, however, between those cases and the sentencing procedures involved here. In *Claassen* and *Barenblatt*, there was only one sentence on several counts and one could be no surer there than here that the sentence did or did not rest on any one of the counts. Those cases, however, would sustain the sentence if it was authorized under any of the valid counts. *Stromberg*, *Thomas*, and *Street* should no more invalidate the single sentence in this case.

Thus in my view there would be no *Stromberg-Thomas-Street* problem, as such, if the invalid count had rested on constitutionally inadmissible evidence. But since the jury is instructed to take into account all the evidence, there would remain the question whether the inadmissible evidence invalidates the sentence. Perhaps it would, but at least there

would be room for the application of the harmless-error rule, which would not be the case, it seems to me, under the *per se* rule of *Stromberg, Street,* and *Thomas.*

Except for the foregoing, I join the Court's opinion and its judgment as well.

JUSTICE REHNQUIST, concurring in the judgment.

While agreeing with the Court's judgment, I write separately to make clear my understanding of the application of the Eighth and Fourteenth Amendments to the capital sentencing procedures used in this case. I agree with the Court's treatment of the factual and procedural background of the case, and with its characterization of the questions presented for review. In brief, we must decide whether the procedure by which Georgia imposes the death sentence comports with the Eighth and Fourteenth Amendments; whether, in this case, imposition of the death sentence violates the rule of *Stromberg* v. *California,* 283 U. S. 359 (1931); and whether the erroneous presentation to a jury of an invalid aggravating circumstance requires vacating the death sentence imposed by that jury.

I

The Georgia death sentencing procedure is comprehensively detailed in the statutes of the State, decisions of the Georgia courts, the opinion issued by the Georgia Supreme Court in response to the question certified by this Court, *Zant* v. *Stephens,* 456 U. S. 410 (1982), and the jury instructions in this case. As these materials reveal, two separate proceedings are necessary to imposition of the death sentence in Georgia. The first stage is simply a traditional criminal trial on the question of guilt or innocence. If the defendant is found guilty of a capital offense, a separate sentencing proceeding is then conducted.

At this second proceeding, the State and the defendant are permitted to introduce a wide range of evidence in "extenuation, mitigation, and aggravation of punishment." Ga. Code

§ 27–2503 (1978). The sentencing body is then directed to make two separate decisions. First, it decides whether any of a number of specific, statutorily defined aggravating circumstances have been proved beyond a reasonable doubt. Ga. Code § 27–2534.1(b) (1978). In addition, the jury is instructed that, if it finds one or more of the statutory aggravating circumstances, it is to make the further judgment whether the defendant deserves the death sentence. In making this second decision, statutory aggravating circumstances found by the sentencer are considered together with all the other evidence in mitigation and aggravation. The sentencer is not, however, instructed to formally "weigh" the aggravating circumstances against the mitigating circumstances. If a death sentence is imposed, then the case receives both conventional appellate consideration and expedited direct review by the Supreme Court of Georgia.

Respondent challenges the Georgia death sentencing system as violative of the Eighth Amendment, on the grounds that it fails adequately to channel the discretion of the sentencing body. In particular, respondent urges that the absence of an instruction that the sentencer must balance statutory aggravating circumstances against mitigating circumstances before imposing the death sentence renders the scheme unconstitutional under the reasoning in *Furman* v. *Georgia*, 408 U. S. 238 (1972). Respondent's claim is, in my opinion, completely foreclosed by this Court's precedents.

Except in minor detail, Georgia's current system is identical to the sentencing procedure we held constitutional in *Gregg* v. *Georgia*, 428 U. S. 153 (1976) (opinion of Stewart, POWELL, and STEVENS, JJ.); *id.*, at 207 (WHITE, J., concurring in judgment). The joint opinion in *Gregg* fully recognized that the Georgia scheme did not direct the sentencing body that statutory aggravating and mitigating circumstances were to be weighed against each other in any formal sense. This is evident from its careful description of the Georgia scheme, *id.*, at 196–197, and its treatment of the

Model Penal Code's proposed system, *id.*, at 193, where the fact that the sentencing body is formally instructed to weigh aggravating and mitigating circumstances was specifically noted. Notwithstanding the lack of an explicit "balancing" directive, the joint opinion upheld the statutory scheme, since, taken as a whole, it provided the sentencing authority with sufficient guidance to prevent the "freakish" imposition of death barred in *Furman*. Likewise, in JUSTICE WHITE's concurrence, 428 U. S., at 211, the role of aggravating circumstances was squarely discussed, and approved. To accept respondent's contention that the sentencing body must be specifically instructed to balance statutory aggravating circumstances against mitigating circumstances would require rejecting the judgment in *Gregg* that the Georgia statute provided the sentencing body with adequate guidance to permit it to impose death.[1]

## II

Respondent next contends that *Stromberg* v. *California*, 283 U. S. 359 (1931), requires that his death sentence be set aside. Respondent's argument rests on the fact that one of the three aggravating circumstances specified by the jury in

---

[1] In *Jurek* v. *Texas*, 428 U. S. 262 (1976), we approved a death penalty statute providing even less explicitly for the type of "weighing" that respondent claims is necessary. In Texas, persons convicted of five types of homicide faced a second proceeding in which the jury was required to answer three questions—whether the defendant's acts were committed deliberately and with the reasonable expectation that they would result in death; whether there was a probability that the defendant would commit violent acts constituting a continuing threat to society; and whether the defendant's acts were in response to some sort of provocation. As the joint opinion recognized, the sole function of the "aggravating circumstances" in the Texas system was to "narro[w] the categories of murders for which a death sentence may ever be imposed," *id.*, at 270. Since these "aggravating circumstances" were only considered at the guilt determination phase of trial, not at sentencing, the system could not contain a requirement that the jury "balance" these circumstances against mitigating circumstances— as respondent contends is constitutionally required in this case.

his case was later found invalid under a state-court decision holding the statutory definition of the circumstance impermissibly vague under the United States Constitution. *Arnold* v. *State*, 236 Ga. 534, 224 S. E. 2d 386 (1976).[2] Respondent reasons that *Stromberg* establishes a rule requiring that any general verdict returned by a factfinder be set aside if it is based, even in part, upon "an invalid factor." Supplemental Brief for Respondent 8. According to respondent, because one of the aggravating circumstances found by the jury was invalid, the general verdict of death returned by the jury fails the *Stromberg* test.

Careful examination of *Stromberg*, cases following that decision, and the role of aggravating circumstances in a jury's imposition of the death penalty compels rejection of respondent's claim. *Stromberg* presented a straightforward case. The defendant was convicted for violating a California statute prohibiting the display of a red flag for any of three separate purposes. At trial the jury was instructed that the defendant should be convicted if he acted with any one of the proscribed purposes; it returned a general verdict of guilty without indicating which purpose it believed motivated the defendant. This Court concluded that the first of the clauses of the statute detailing impermissible purposes was unconstitutional, and held that it was unnecessary to decide the validity of the remaining two clauses. The Court observed that the prosecutor had "emphatically urged upon the jury that they could convict the appellant under the first clause alone, without regard to the other clauses." 283 U. S., at 368. It concluded that it was "impossible to say under which clause of the statute the conviction was obtained," *ibid.*, and that, given this complete uncertainty, the conviction could not stand. See also *Williams* v. *North Carolina*, 317 U. S.

---

[2] I assume, for purposes of this decision, that *Arnold* was correctly decided and that it was properly applied to respondent's case. I express no view as to the correctness of that decision or its application.

287, 292 (1942); *Cramer* v. *United States*, 325 U. S. 1, 36, n. 45 (1945); *Terminiello* v. *Chicago*, 337 U. S. 1, 5–6 (1949); *Yates* v. *United States*, 354 U. S. 298, 311–312 (1957). Of course, if the jury *does* indicate which statutory elements supported its verdict, and if these are valid, then *Stromberg* is inapplicable.

As the Court points out, the *Stromberg* doctrine subsequently was extended—albeit without lengthy analysis. In *Street* v. *New York*, 394 U. S. 576, 586–590 (1969), the Court vacated a conviction, based on a single-count indictment, for casting contempt on the United States flag. The statute under which petitioner was convicted criminalized casting contempt upon the flag by "words or act." *Id.*, at 578. The information filed against petitioner alleged that he violated this statute because he both burned the flag and shouted derogatory statements about it. Likewise, the State introduced evidence at the bench trial of both the petitioner's act and his speech. The Court concluded that petitioner's constitutional rights would have been violated had he been punished for his speech. It thought, moreover, that the trial judge might have rested his finding *solely* on petitioner's speech, which presented a situation similar to that in *Stromberg*.

In addition, however, the Court believed that, on the record of the case, there was an "unacceptable danger that the trier of fact . . . regarded the two acts as 'intertwined' and . . . rested the conviction on both together." 394 U. S., at 588. In short, when an element of a crime is defined to include constitutionally protected actions, and when the State alleges, argues, and offers proof that the defendant's protected conduct satisfied the element, then a general verdict of guilty must be set aside, even if the State also alleged and proved another course of conduct that could have satisfied the element. As in *Stromberg*, however, the Court also noted that when the record indicates that the jury's verdict did not rest on an "intertwined" combination of protected and

unprotected conduct, but instead rested sufficiently on unprotected conduct, then the verdict would stand.

Neither the *Stromberg* line of cases nor *Street* provides respondent with appreciable support. I agree with the Court that the *Stromberg* rule is plainly distinguishable, since the jury explicitly returned two concededly valid aggravating circumstances, thereby conclusively negating the inference that it rested *solely* on the invalid circumstance. Likewise, I conclude that the analysis in *Street* is inapposite.[3] It is helpful in explaining why this is the case to discuss separately the two decisions made by the sentencing body during the Georgia death penalty proceedings. I initially consider the applicability of *Street* to the jury's first decision, that is, the finding of statutory aggravating circumstances.

As indicated above, *Street* explicitly stated that its rule regarding the treatment of aggravating circumstances is inapplicable "when the indictment or information is in several counts and the conviction is explicitly declared to rest on findings of guilt on certain of those counts, for in such instances there is positive evidence that the trier of fact considered each count on its own merits and separately from the others." 394 U. S., at 588 (footnote omitted). This exception to the *Street* rule extends to the jury's determination in this case that certain specified aggravating circumstances existed. The jury received separate instructions as to each of several aggravating circumstances, and returned a verdict form separately listing three circumstances. The fact that one of these subsequently proved to be invalid does not affect the validity of the remaining two jury findings, just as the reversal on appeal of one of several convictions returned to sepa-

---

[3] As the Court points out, *Street* properly has been confined to situations where there is a substantial risk that the jury has imposed criminal punishment because of activity protected by the Constitution. Respondent's history of violent conduct, on which the invalid aggravating circumstance was based, plainly falls outside this category, and *Street* therefore is inapplicable to this case.

rate counts does not affect the remaining convictions. There was "positive evidence" that Stephens' jury considered each aggravating circumstance "on its own merits and separately from the others." *Ibid.* Because of this, *Street* provides no basis for questioning the jury's first decision, which, if supported, permitted it to go further and consider whether Stephens deserved the death sentence.

*Street's* logic is even less applicable to a Georgia death jury's second decision, namely, that the defendant deserved the death sentence. Under respondent's theory, the jury's verdict of death was based in part on an aggravating circumstance that later proved invalid, and which, according to respondent must thus fall under the rule of *Street.* Whatever its proper application elsewhere, *Street's* rule cannot fairly be extended to the sentencing context. As discussed below, the significant differences between the role of aggravating circumstances in the jury's decision to impose the death sentence and the role played by instructions or allegations in a jury's determination of guilt preclude applying *Street* to the sentencing context.

The rule relied upon by respondent was developed in a situation where a factfinder returns a verdict of guilty on a specific criminal charge. In returning this verdict, the jury decides whether the defendant committed a specific set of defined acts with a particular mental state. These elements, each of which is necessary to the verdict of guilty, are specifically and carefully enumerated and defined in the indictment or information and the instructions to the jury. Only evidence relevant to the particular elements alleged by the State is admissible, and, even then, subject to exclusion of prejudicial evidence which might distract the jury from the specific factfinding task it performs. Based on this evidence the jury decides whether each of the elements constituting the offense was proved beyond a reasonable doubt. The Court's observation in *Williams* v. *New York,* 337 U. S. 241, 246–247 (1949), accurately captures the character of the pro-

cedure leading to a criminal conviction: "In a trial before verdict the issue is whether a defendant is guilty of having engaged in certain criminal conduct of which he has been specifically accused. Rules of evidence have been fashioned for criminal trials . . . narrowly confin[ing] the trial contest . . . ."

The decision by a Georgia death jury at the final stage of its deliberations to impose death is a significantly different decision from the model just described. A wide range of evidence is admissible on literally countless subjects: "We have long recognized that '[f]or the determination of sentences, justice generally requires . . . that there be taken into account the *circumstances of the offense* together with the *character and propensities of the offender.*" *Gregg,* 428 U. S., at 189 (emphasis added). In considering this evidence, the jury does not attempt to decide whether particular elements have been proved, but instead makes a unique, individualized judgment regarding the punishment that a particular person deserves. See *Lockett v. Ohio,* 438 U. S. 586, 602–605 (1978).

The role of aggravating circumstances in making this judgment is substantially more limited than the role played by jury instructions or allegations in an indictment in an ordinary trial. In Georgia, aggravating circumstances serve principally to restrict the class of defendants subject to the death sentence; once a single aggravating circumstance is specified, the jury then considers all the evidence in aggravation-mitigation in deciding whether to impose the death penalty, see Part I, *supra.* An aggravating circumstance in this latter stage is simply one of the countless considerations weighed by the jury in seeking to judge the punishment appropriate to the individual defendant.

If an aggravating circumstance is revealed to be invalid, the probable effect of this fact alone on the jury's second decision—whether the death sentence is appropriate—is minimal. If one of the few theories of guilt presented to the jury

in the trial judge's instructions, or the indictment, proves invalid, there is a substantial risk that the jury may have based its verdict on an improper theory. This follows from the necessarily limited number of theories presented to the jury, and from the fact that the jury's decisionmaking is carefully routed along paths specifically set out in the instructions. When an aggravating circumstance proves invalid, however, the effect ordinarily is only to diminish the probative value of one of literally countless factors that the jury considered. The inference that this diminution would alter the result reached by the jury is all but nonexistent. Given this, the rule developed in *Street* simply cannot be applied sensibly to sentencing decisions resulting from proceedings involving aggravating circumstances. Instead, as developed in the following Part, a different analysis has been applied to the question whether to set aside sentencing decisions based in part upon invalid factors.

## III

Respondent contends next that, even if *Street* is inapplicable, the erroneous submission to the jury of an instruction which we are bound to regard as unconstitutionally vague, see n. 3, *supra*, must have had sufficient effect on the jury's deliberations to require vacating its verdict. Although our prior decisions are not completely consistent regarding the effect of constitutional error in sentencing proceedings on the sentence imposed on the defendant, in general sentencing decisions are accorded far greater finality than convictions.

Ordinarily, a sentence within statutory limits is beyond appellate review. *Gore* v. *United States*, 357 U. S. 386, 393 (1958). In *Street*, 394 U. S., at 588, n. 9, we cited with approval to several of a long line of sentencing decisions. In *Claassen* v. *United States*, 142 U. S. 140 (1891); *Pinkerton* v. *United States*, 328 U. S. 640 (1946); and *Barenblatt* v. *United States*, 360 U. S. 109 (1959), defendants were convicted on several separate counts and received "general sentences,"

not linked to any one or combination of the counts. The defendants then challenged all their convictions on writ of error or appeal. The Court, following a well-settled rule, stated in *Barenblatt:* "Since this sentence was less than the maximum punishment authorized by the statute for conviction under any one Count, the judgment below must be upheld if the conviction upon any of the Counts is sustainable." *Id.*, at 115 (footnote omitted). In *Claassen* we said: "[I]t is settled law in this court, and in this country generally, that in any criminal case a general verdict and judgment on an indictment or information containing several counts cannot be reversed on error, if any one of the counts is good and warrants the judgment, because, in the absence of anything in the record to show the contrary, the presumption of law is that the court awarded sentence on the good count only." 142 U. S., at 146–147.

The practical basis for the rules articulated in *Gore* and the *Claassen* line of cases is clear. As indicated above, sentencing decisions rest on a far-reaching inquiry into countless facts and circumstances and not on the type of proof of particular elements that returning a conviction does. The fact that one of the countless considerations that the sentencer would have taken into account was erroneous, misleading, or otherwise improperly before him, ordinarily can be assumed not to have been a necessary basis for his decision. Nonetheless, in limited cases, noncapital sentencing decisions *are* vacated for resentencing.

In *United States* v. *Tucker*, 404 U. S. 443 (1972), two uncounseled—and therefore unconstitutionally obtained—convictions were introduced against the defendant in the sentencing proceeding. The Court observed that the sentencing judge gave "explicit" and "specific" attention, *id.*, at 444, 447, to these convictions. Moreover, it noted that the defendant would have "appeared in a dramatically different light" had the true character of the unconstitutional convictions been known: the judge would have been dealing with a

man unconstitutionally imprisoned, beginning at age 17, for more than 10 years, including 5½ years on a chain gang. *Id.*, at 448. Finally, the Court reemphasized the unconstitutional character of the respondent's prior convictions, and opined that to permit his sentence to stand would "erode" the rule in *Gideon* v. *Wainwright*, 372 U. S. 335 (1963). Given all this, respondent's sentence was held improper, and the case was remanded for resentencing.

Similarly, in *Townsend* v. *Burke*, 334 U. S. 736 (1948), an uncounseled defendant was sentenced following a proceeding in which the trial judge explicitly and repeatedly relied upon the incorrect assumption that the defendant had been convicted of several crimes. The Court observed that "[i]t is not the duration or severity of this sentence that renders it constitutionally invalid; it is the careless or designed pronouncement of sentence on a foundation so extensively and materially false, which the prisoner had no opportunity to correct by the services which counsel would provide, that renders the proceedings lacking in due process." *Id.*, at 741.

The approach taken in *Tucker*, *Townsend*, and the *Claassen* line of cases begins with the presumption that, since the sentencer's judgment rested on countless variables, an error made in one portion of the sentencing proceeding ordinarily should not affect the sentence. This presumption is most plainly revealed by the *Claassen* line of cases, where a sentence will stand even if it turns out that the crimes for which the defendant was sentenced had not all been committed. Nonetheless, the defendant may adduce evidence that the sentencing body likely would have acted differently had the error not occurred. In order to prevail on such a claim, however, we have required a convincing showing that the introduction of specific constitutionally infirm evidence had an ascertainable and "dramatic" impact on the sentencing authority. See *United States* v. *Tucker, supra; Townsend* v. *Burke, supra.* Of course, a more careful application of this standard is appropriate in capital cases.

In the present case, however, the erroneous submission to the jury of an invalid aggravating circumstance simply cannot satisfy whatever standard may plausibly be based on the cases discussed above. As the Court points out, the only real impact resulting from the error was that evidence properly before the jury was capable of being fit within a category that the judge's instructions labeled "aggravating." The evidence in question—respondent's prior convictions—plainly was an aggravating factor, which, as we held in *Gregg*, the jury was free to consider. The fact that the instruction gave added weight to this no doubt played some role in the deliberations of some jurors. Yet, the Georgia Supreme Court was plainly right in saying that the "mere fact that some of the aggravating circumstances presented were improperly designated 'statutory'" had "an inconsequential impact on the jury's decision regarding the death penalty." 250 Ga. 97, 100, 297 S. E. 2d 1, 4 (1982). The plurality recognized in *Lockett* v. *Ohio*, 438 U. S., at 605, that there can be "no perfect procedure for deciding in which cases governmental authority should be used to impose death." Whatever a defendant must show to set aside a death sentence, the present case involved only a remote possibility that the error had any effect on the jury's judgment; the Eighth Amendment did not therefore require that the defendant's sentence be vacated.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

Even if I accepted the prevailing view that the death penalty may constitutionally be imposed under certain circumstances, I could scarcely join in upholding a death sentence based in part upon a statutory aggravating circumstance so vague that its application turns solely on the "whim" of the jury. *Arnold* v. *State*, 236 Ga. 534, 541, 224 S. E. 2d 386, 391 (1976).

The submission of the unconstitutional statutory aggravating circumstance to the jury cannot be deemed harmless error on the theory that "in Georgia, the finding of an ag-

gravating circumstance does not play *any role* in guiding the sentencing body in the exercise of its discretion, apart from its function of narrowing the class of persons convicted of murder who are eligible for the death penalty." *Ante*, at 874 (emphasis added). If the trial judge's instructions had apprised the jury of this theory, it might have been proper to assume that the unconstitutional statutory factor did not affect the jury's verdict. But such instructions would have suffered from an even more fundamental constitutional defect—a failure to provide any standards whatsoever to guide the jury's actual sentencing decision. If this Court's decisions concerning the death penalty establish anything, it is that a capital sentencing scheme based on "standardless jury discretion" violates the Eighth and Fourteenth Amendments. *Gregg* v. *Georgia*, 428 U. S. 153, 195, n. 47 (1976) (opinion of Stewart, POWELL, and STEVENS, JJ.), citing *Furman* v. *Georgia*, 408 U. S. 238 (1972).

In any event, the jury that sentenced respondent to death was never informed of this "threshold" theory, which was invented for the first time by the Georgia Supreme Court more than seven years later. Under the instructions actually given, a juror might reasonably have concluded, *as has this Court in construing essentially identical instructions*, that any aggravating circumstances, *including* statutory aggravating circumstances, should be balanced against any mitigating circumstances in the determination of the defendant's sentence. There is no way of knowing whether the jury would have sentenced respondent to death if its attention had not been drawn to the unconstitutional statutory factor.

I

I continue to adhere to my view that the death penalty is in all circumstances cruel and unusual punishment forbidden by the Eighth and Fourteenth Amendments. See *Gregg* v. *Georgia, supra*, at 231 (MARSHALL, J., dissenting); *Furman* v. *Georgia, supra*, at 314 (MARSHALL, J., concurring).

## II

Today the Court upholds a death sentence that was based in part on a statutory aggravating circumstance which the State concedes was so amorphous that it invited "subjective decision-making without . . . minimal, objective guidelines for its application." *Arnold* v. *State, supra,* at 541, 224 S. E. 2d, at 391. In order to reach this surprising result, the Court embraces the theory, which it infers from the Georgia Supreme Court's response to this Court's certified question,[1] that the only function of statutory aggravating circumstances in Georgia is to screen out at the threshold defendants to whom none of the 10 circumstances applies. According to this theory, once 1 of the 10 statutory factors has been found, they drop out of the picture entirely and play no part in the jury's decision whether to sentence the defendant to death. Relying on this "threshold" theory, the Court concludes that

[1] Although the Court asserts that "the Georgia Supreme Court has unambiguously advised us" that the finding of one or more of the statutory aggravating circumstances "merely performs the function of narrowing the category of persons convicted of murder who are eligible for the death penalty" and serves no other function, *ante,* at 875, the Georgia Supreme Court's answer to our certified question is in fact far from clear. The answer states only that the threshold "is passed regardless of the number of statutory aggravating circumstances found, so long as there is at least one," and that thereafter the sentencer may consider "all the facts and circumstances of the case." 250 Ga. 97, 100, 297 S. E. 2d 1, 4 (1982). To say that all aggravating circumstances, statutory and nonstatutory, may be considered once one statutory circumstance has been found, is not to say that "the finding of an aggravating circumstance does not play *any* role in guiding the sentencing body in the exercise of its discretion, apart from its function of narrowing the class of persons convicted of murder who are eligible for the death penalty." *Ante,* at 874 (emphasis added). There is nothing in the Georgia Supreme Court's opinion to suggest that jurors are not to give special attention to statutory aggravating circumstances *throughout their deliberations,* rather than simply in making the threshold determination whether any such circumstances apply.

Nonetheless, for the purposes of this opinion I will assume that the majority has correctly characterized the Georgia Supreme Court's explanation of the Georgia capital sentencing procedure.

the submission of the unconstitutional statutory factor did not prejudice respondent.

If the jury instructions given some eight years ago were consistent with this new theory, we could assume that the jury did not focus on the vague statutory aggravating circumstance in making its actual sentencing decision. But if the jury had been so instructed, the instructions would have been constitutionally defective for a more basic reason, since they would have left the jury totally without guidance once it found a single statutory aggravating circumstance.

## A

Until this Court's decision in *Furman* v. *Georgia* in 1972, the capital sentencing procedures in most States delegated to judges and juries plenary authority to decide when a death sentence should be imposed. The sentencer was given "practically untrammeled discretion to let an accused live or insist that he die." *Furman* v. *Georgia, supra,* at 248 (Douglas, J., concurring) (footnote omitted).

In *Furman* this Court held that the system of capital punishment then in existence in this country was incompatible with the Eighth and Fourteenth Amendments. As was later recognized in *Gregg* v. *Georgia, Furman* established one basic proposition if it established nothing else: "where the ultimate punishment of death is at issue a system of standardless jury discretion violates the Eighth and Fourteenth Amendments." 428 U. S., at 195, n. 47 (opinion of Stewart, POWELL, and STEVENS, JJ.). The basic teaching of *Furman* is that a State may not leave the decision whether a defendant lives or dies to the unfettered discretion of the jury, since such a scheme is "pregnant with discrimination," 408 U. S., at 257 (Douglas, J., concurring), and inevitably results in death sentences which are "wantonly and . . . freakishly imposed," *id.,* at 310 (Stewart, J., concurring), and for which "there is no meaningful basis for distinguishing the few cases in which [the death penalty] is imposed from the many

cases in which it is not." *Id.*, at 313 (WHITE, J., concurring).[2] See *Gregg* v. *Georgia,* 428 U. S., at 195, n. 47 (noting that *Furman* "ruled that death sentences imposed under statutes that left juries with untrammeled discretion to impose or withhold the death penalty violated the Eighth and Fourteenth Amendments").

Four years after *Furman* was decided, this Court upheld the capital sentencing statutes of Georgia, Florida, and Texas against constitutional attack, concluding that those statutes contained safeguards that promised to eliminate the constitutional deficiencies found in *Furman.* See *Gregg* v. *Georgia; Proffitt* v. *Florida,* 428 U. S. 242 (1976); *Jurek* v. *Texas,* 428 U. S. 262 (1976). The Court's conclusion was based on the premise that the statutes ensured that sentencers would be "given guidance regarding the factors about the crime and the defendant that the State, representing organized society, deems particularly relevant to the sentencing decision." *Gregg* v. *Georgia,* 428 U. S., at 192 (opinion of Stewart, POWELL, and STEVENS, JJ.).[3] The Court assumed that the iden-

---

[2] JUSTICE BRENNAN and I were the other two Members of the *Furman* majority. We concluded that the death penalty is in all circumstances cruel and unusual punishment. 408 U. S., at 257 (BRENNAN, J., concurring); *id.*, at 314 (MARSHALL, J., concurring).

[3] See *Gregg* v. *Georgia,* 428 U. S., at 221 (WHITE, J., joined by BURGER, C. J., and REHNQUIST, J., concurring in judgment) ("The Georgia Legislature has made an effort to identify those aggravating factors which it considers necessary *and relevant* to the question whether a defendant convicted of capital murder should be be sentenced to death") (emphasis added; footnote omitted); *Proffitt* v. *Florida,* 428 U. S. 242, 251 (1976) (opinion of Stewart, POWELL, and STEVENS, JJ.) ("The sentencing authority in Florida, the trial judge, is directed to weigh eight aggravating factors against seven mitigating factors to determine whether the death penalty shall be imposed"); *id.*, at 260 (WHITE, J., joined by BURGER, C. J., and REHNQUIST, J., concurring in judgment) ("although the statutory aggravating and mitigating circumstances are not susceptible of mechanical application, they are by no means so vague and overbroad as to leave the discretion of the sentencing authority unfettered"); *Jurek* v. *Texas,* 428 U. S. 262, 273–274 (1976) (opinion of Stewart, POWELL, and STEVENS, JJ.)

tification of specific statutory aggravating circumstances would put an end to standardless sentencing discretion:

> "These procedures require the jury to consider the circumstances of the crime and the criminal before it recommends sentence. No longer can a Georgia jury do as Furman's jury did: reach a finding of the defendant's guilt and then, without guidance or direction, decide whether he should live or die. Instead, *the jury's attention is directed to the specific circumstances of the crime:* Was it committed in the course of another capital felony? Was it committed for money? Was it committed upon a peace officer or judicial officer? Was it committed in a particularly heinous way or in a manner that endangered the lives of many persons? In addition, *the jury's attention is focused on the characteristics of the person who committed the crime:* Does he have a record of prior convictions for capital offenses? Are there any special facts about this defendant that mitigate against imposing capital punishment . . . . As a result, while some jury discretion still exists, '*the discretion to be exercised is controlled by clear and objective standards so as to produce non-discriminatory application.*'" *Id.*, at 197–198 (opinion of Stewart, POWELL, and STEVENS, JJ.) (emphasis added; footnote and citation omitted).

In *Godfrey* v. *Georgia*, 446 U. S. 420 (1980), the Court reiterated that a State "must channel the sentencer's discretion by 'clear and objective standards' that provide 'specific and detailed guidance.'" *Id.*, at 428 (plurality opinion) (citations

---

("It . . . appears that . . . the Texas capital-sentencing procedure guides and focuses the jury's objective consideration of the particularized circumstances of the individual offense and the individual offender before it can impose a sentence of death"); *id.*, at 279 (WHITE, J., joined by BURGER, C. J., and REHNQUIST, J., concurring in judgment) ("the Texas capital punishment statute limits the imposition of the death penalty to a narrowly defined group of the most brutal crimes and aims at limiting its imposition to similar offenses occurring under similar circumstances").

omitted). The Court reaffirmed the teaching of *Furman* and *Gregg* that "the penalty of death may not be imposed under sentencing procedures that create a substantial risk that the punishment will be inflicted in an arbitrary and capricious manner." 446 U. S., at 427. "[I]f a State wishes to authorize capital punishment it has a constitutional responsibility to tailor and apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty." *Id.*, at 428.

## B

Today we learn for the first time that the Court did not mean what it said in *Gregg* v. *Georgia.* We now learn that the actual decision whether a defendant lives or dies may still be left to the unfettered discretion of the jury. Although we were assured in *Gregg* that sentencing discretion was "'to be exercised . . . by clear and objective standards,'" 428 U. S., at 198 (opinion of Stewart, POWELL, and STEVENS, JJ.), we are now told that the State need do nothing whatsoever to guide the jury's ultimate decision whether to sentence a defendant to death or spare his life.

Under today's decision all the State has to do is require the jury to make some threshold finding. Once that finding is made, the jurors can be left completely at large, with nothing to guide them but their whims and prejudices. They need not even consider any statutory aggravating circumstances that they have found to be applicable. Their sentencing decision is to be the product of their discretion and of nothing else.

If this is not a scheme based on "standardless jury discretion," *Gregg* v. *Georgia,* 428 U. S., at 195, n. 47 (opinion of Stewart, POWELL, and STEVENS, JJ.), I do not know what is. Today's decision makes an absolute mockery of this Court's precedents concerning capital sentencing procedures. There is no point in requiring state legislatures to identify specific aggravating circumstances if sentencers are to be left free to ignore them in deciding which defendants are to die. If this is all *Gregg* v. *Georgia* stands for, the States may as well be

permitted to reenact the statutes that were on the books be-
fore *Furman*.

The system of discretionary sentencing that the Court
approves today differs only in form from the capital sentenc-
ing procedures that this Court held unconstitutional more
than a decade ago. The only difference between Georgia's
pre-*Furman* capital sentencing scheme and the "threshold"
theory that the Court embraces today is that the unchecked
discretion previously conferred in all cases of murder is now
conferred in cases of murder with one statutory aggravating
circumstance. But merely circumscribing the category of
cases eligible for the death penalty cannot remove from con-
stitutional scrutiny the procedure by which those actually
sentenced to death are selected.

More than a decade ago this Court struck down an Ohio
statute that permitted a death sentence only if the jury found
that the victim of the murder was a police officer, but gave
the jury unbridled discretion once that aggravating factor
was found. *Duling* v. *Ohio*, 408 U. S. 936 (1972), summarily
rev'g 21 Ohio St. 2d 13, 254 N. E. 2d 670 (1970). See Ohio
Rev. Code Ann. § 2901.04 (1953). There is no difference of
any consequence between the Ohio scheme held impermissi-
ble in *Duling* and the "threshold" scheme that the Court en-
dorses today. If, as *Duling* establishes, the Constitution
prohibits a State from defining a crime (such as murder of a
police officer) and then leaving the decision whether to im-
pose the death sentence to the unchecked discretion of the
jury, it must also prohibit a State from defining a lesser crime
(such as murder) and then permitting the jury to make a
standardless sentencing decision once it has found a single
aggravating factor (such as that the victim was a police offi-
cer). In both cases the ultimate decision whether the de-
fendant will be killed is left to the discretion of the sentencer,
unguided by *any* legislative standards.[4] Whether a particu-

---

[4] This remains true whether or not the aggravating factor satisfies the
Court's requirement that it "genuinely narrow the class of persons eligible

lar preliminary finding was made at the guilt phase of the trial or at the sentencing phase is irrelevant; a requirement that the finding be made at the sentencing phase in no way channels the sentencer's discretion once that finding has been made.[5]   If the Constitution forbids one form of standardless discretion, it must forbid the other as well.

## III

### A

In any event, the jury that sentenced respondent to death was never apprised of the "threshold" theory relied upon by the Court.   There is no basis for the Court's assumption,

---

for the death penalty and . . . reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder."   *Ante,* at 877.

[5] This Court has repeatedly recognized that a capital sentencing statute does not satisfy the Constitution simply because it requires a bifurcated trial and permits presentation at the penalty phase of evidence concerning the circumstances of the crime, the defendant's background and history, and other factors in aggravation and mitigation of punishment.   *E. g., Delgado* v. *Connecticut,* 408 U. S. 940 (1972), summarily rev'g 161 Conn. 536, 290 A. 2d 338 (1971) (see Conn. Gen. Stat. § 53–10 (1968)); *Moore* v. *Illinois,* 408 U. S. 786 (1972) (see Ill. Rev. Stat., ch. 38, § 1–7 (1963)); *Scoleri* v. *Pennsylvania,* 408 U. S. 934 (1972), summarily rev'g 432 Pa. 571, 248 A. 2d 295 (1968) (see Pa. Stat. Ann., Tit. 18, § 4701 (1963)).   Although the creation of a separate sentencing proceeding permits the exclusion from the guilt phase of information that is relevant only to sentencing and that might prejudice the determination of guilt, merely bifurcating the trial obviously does nothing to guide the discretion of the sentencer.   See *Gregg* v. *Georgia,* 428 U. S., at 192 (opinion of Stewart, POWELL, and STEVENS, JJ.).

Nor is mandatory appellate review a substitute for legislatively defined criteria to guide the jury in imposing sentence.   *Ante,* at 890.   Although appellate review may serve to reduce arbitrariness and caprice "[w]here the sentencing authority is required to specify the factors it relied upon in reaching its decision," *Gregg* v. *Georgia, supra,* at 195 (opinion of Stewart, POWELL, and STEVENS, JJ.), appellate review cannot serve this function where statutory aggravating circumstances play only a threshold role and an appellate court therefore has no means of ascertaining the factors underlying the jury's ultimate sentencing decision.

*ante*, at 891, that the jury did not attribute special significance to the statutory aggravating circumstances and did not weigh them, along with any other evidence in aggravation, against the evidence offered by respondent in mitigation.

In the first place,

> "everything about the judge's charge highlighted the importance of the aggravating circumstances. Not only were the circumstances submitted to the jury in writing, but also the jury was in turn required to write down each and every aggravating circumstance that it found to be established beyond a reasonable doubt. . . . The jury instructions provide absolutely no indication that, after carefully considering each of the statutory aggravating circumstances submitted by the trial judge, the jury should, or even could, discard the list of officially sanctioned grounds for imposing the death penalty in deciding whether to actually sentence respondent to death."
> *Zant* v. *Stephens*, 456 U. S. 410, 427 (1982) (MARSHALL, J., dissenting).

In deciding whether respondent deserved to die, the jurors might well have deemed his prior assaults unimportant if the judge had not specifically focused on them in his charge.

Second, the Court's assertion that "in Georgia, the finding of an aggravating circumstance does not play any role in guiding the sentencing body in the exercise of its discretion," *ante*, at 874, is flatly inconsistent with this Court's own previous characterizations of the function of statutory aggravating circumstances in the Georgia scheme. In *Gregg* v. *Georgia*, where the jury instructions were essentially identical to those given here,[6] the joint opinion of Justices Stewart,

---

[6] The instructions given in this case are set forth in the Court's opinion last Term certifying a question to the Georgia Supreme Court. See *Zant* v. *Stephens*, 456 U. S. 410, 411–412, n. 1 (1982). The instructions given in *Gregg* are quoted in JUSTICE WHITE's opinion concurring in the judgment in that case. See 428 U. S., at 217–218.

POWELL, and STEVENS took great pains to point out that the statutory aggravating circumstances served to apprise the sentencer "of the information relevant to the imposition of sentence and [to] provid[e] standards to guide its use of the information." 428 U. S., at 195. There was not the slightest hint that the statutory factors are relevant only to the threshold determination of whether the defendant is eligible to receive the death penalty. On the contrary, the joint opinion emphasized that they informed the sentencer of "the factors . . . that the State . . . deems particularly relevant *to the sentencing decision.*" *Id.*, at 192 (emphasis added). If it had been thought that statutory aggravating circumstances were to play only a threshold role in the sentencing process, it would have made no sense at all to say that a jury's verdict identifying one or more of those circumstances served to apprise appellate courts of "the factors it relied upon *in reaching its decision.*" *Id.*, at 195 (emphasis added). The very premise of the "threshold" theory adopted today is that statutory aggravating circumstances are *not* relied upon by the jury in reaching its ultimate sentencing decision, but are considered *only* in deciding whether the defendant is eligible to receive the death penalty.

The Court's assumption that respondent's jury did not balance aggravating circumstances against mitigating circumstances is also inconsistent with this Court's characterization of the almost identical instructions given in *Coker* v. *Georgia,* 433 U. S. 584 (1977) (plurality opinion). See App. in *Coker* v. *Georgia,* O. T. 1976, No. 75–5444, pp. 298–302. In *Coker,* as in this case, the jury was not expressly instructed to weigh aggravating against mitigating circumstances, but the plurality opinion sensibly recognized that such a weighing is inherent in any determination of whether mitigating circumstances warrant a life sentence notwithstanding the existence of aggravating circumstances:

> "The jury was instructed that it could consider as aggravating circumstances whether the rape had been committed by a person with a prior record of conviction

for a capital felony and whether the rape had been committed in the course of committing another capital felony, namely, the armed robbery of Allen Carver. The court also instructed, pursuant to statute, that even if aggravating circumstances were present, the death penalty need not be imposed *if the jury found they were outweighed by mitigating circumstances. . . .*" 433 U. S., at 587–590 (emphasis added).

I would like to know how the jury that sentenced respondent to death in 1975 could have known that statutory aggravating circumstances were to play only a threshold role in their deliberations, when this Court itself has interpreted essentially identical instructions to require a weighing of aggravating and mitigating circumstances and as recently as last Term found it necessary to ask the Georgia Supreme Court to clarify what the instructions in this case meant. We are presented with "different and conflicting theories regarding a charge designed to guide the jury . . . , and yet we are asked to sustain the [death sentence] on the assumption that the jury was properly guided." *Bollenbach* v. *United States*, 326 U. S. 607, 613 (1946). For my part, I believe that a death sentence "ought not to rest on an equivocal direction to the jury on a basic issue." *Ibid.* It is patently unfair to assume that the jury that sentenced respondent somehow understood that statutory aggravating circumstances were to receive no special weight and were not to be balanced against mitigating circumstances. Respondent is "entitled to have the validity of [his sentence] appraised on consideration of the case as it was tried and as the issues were determined in the trial court," *Cole* v. *Arkansas*, 333 U. S. 196, 202 (1948); see *Presnell* v. *Georgia*, 439 U. S. 14, 16 (1978), not on a theory that has been adopted for the first time after the fact.

B

Once it is recognized that respondent's jury may well have assumed that statutory aggravating circumstances deserve

special weight, the injustice of today's decision becomes apparent. Under the Georgia capital sentencing procedure, the sentencer always has discretion not to impose a death sentence regardless of whether there is proof of one or more statutory aggravating circumstances, and regardless of whether there are any mitigating circumstances.

There is simply no way for this Court to know whether the jury would have sentenced respondent to death if the unconstitutional statutory aggravating circumstance had not been included in the judge's charge. If it is important for the State to authorize and for the prosecution to request the submission of a particular statutory aggravating circumstance to the jury, "we must assume that in some cases [that circumstance] will be decisive in the [jury's] choice between a life sentence and a death sentence." *Gardner* v. *Florida*, 430 U. S. 349, 359 (1977) (opinion of STEVENS, J.).

As Justice Stewart pointed out in a similar case, "under Georgia's capital punishment scheme, *only the trial judge or jury* can know and determine what to do when upon appellate review it has been concluded that a particular aggravating circumstance should not have been considered in sentencing the defendant to death." *Drake* v. *Zant*, 449 U. S. 999, 1001 (1980) (dissenting from denial of certiorari) (emphasis added). Although the Court labors mightily in an effort to demonstrate that submission of the unconstitutional statutory aggravating circumstance did not affect the jury's verdict, there is no escape from the conclusion—reached by JUSTICE POWELL only last Term—that respondent was sentenced to death "under instructions that could have misled the jury." *Zant* v. *Stephens*, 456 U. S., at 429 (POWELL, J., dissenting).[7] Where a man's life is at stake, this inconvenient fact should not be simply swept under the rug.

---

[7] Although JUSTICE POWELL stated in his dissent that he would leave it to the Georgia Supreme Court to decide "whether it has authority to find that the instruction was harmless error beyond a reasonable doubt," 456

## C

As I read the Court's opinion, the Court does not deny that respondent might have received only a life sentence if the unconstitutional aggravating circumstance had not been submitted to the jury. Rather, the Court assumes that "the instruction did induce the jury to place greater emphasis upon the respondent's prior criminal record than it would otherwise have done." *Ante*, at 888. The Court concludes, however, that the submission of this unconstitutional statutory factor does not amount to "a constitutional defect in the sentencing process," *ante*, at 889, because the jury could properly have been instructed to decide whether either of the other two statutory factors applied and told in addition that "in deciding whether or not [a death] sentence is appropriate you may consider the remainder of [the defendant's] prior criminal record," *ante*, at 888. The Court finds no constitutional difference between this charge and the charge actually given.

Even assuming that it is proper to sustain a death sentence by reference to a hypothetical instruction that might have been given but was not, the Court errs in assuming that the hypothetical instruction would satisfy the Constitution. As elaborated in Part II above, this Court's decisions establish that the actual determination whether a defendant shall live or die—and not merely the threshold decision whether he is eligible for a death sentence—must be guided by clear and objective standards. The focus of the sentencer's attention must be directed to specific factors whose existence or nonexistence can be determined with reasonable certainty. Since the hypothetical instruction would fail to channel the

---

U. S., at 429, the *per curiam* opinion rejected this approach and asked the Georgia Supreme Court only to clarify the state-law premises underlying its decision to sustain respondent's death sentence. The Georgia Supreme Court was not asked to conduct, and it did not conduct, a review of the evidence to determine whether the instruction was harmless error beyond a reasonable doubt.

sentencer's discretion in this fashion, the Court's assumption that it would be constitutional is unwarranted.[8]

## IV

For the foregoing reasons, I would vacate respondent's death sentence.

---

[8] Even if the hypothetical instruction were permissible, it would not follow that there was no constitutional defect in the instructions given in this case. There is nothing particularly vague about the phrase "prior criminal record"; it would be reasonably clear to any juror of ordinary intelligence that a defendant's prior criminal record consists of his past convictions. By contrast, it is common ground in this case that the statutory aggravating circumstance "substantial history of serious assaultive criminal convictions" is so vague that no two juries could be expected to agree as to whether a particular defendant had such a history.

It is one thing to bring to the jury's attention a readily identifiable factor such as the defendant's prior criminal record, and leave it to the jury to decide what weight that factor should receive. It is quite another thing to ask the jury to determine the applicability of a statutory factor that no group of individuals of ordinary intelligence can be expected to apply in any objective way, and then, if the issue is resolved against the defendant, to take that factor into account in imposing sentence. Both instructions invite the exercise of discretion as to the weight to be given to the statutory factor, but the instruction given here has the further vice of requiring an arbitrary determination that can only be made in a haphazard way. It is as if the jurors were asked to flip a coin and weigh the result in their sentencing decision. Even if the hypothetical charge cited by the Court were proper, the charge given in this case would still be impermissible because it injected an arbitrary determination into the sentencing process.