IN THE SUPREME COURT OF TENNESSEE

AT JACKSON

FILED

June 3, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,                )
                                   )
        Appellee,                  )        Shelby Criminal
                                   )
                                   )
Vs.                                )
                                   )
                                   )
RICHARD ODOM,                      )        No. 02-S-01-9502-CR-00014
a/k/a OTIS SMITH                   )
                                   )
        Appellant.                 )


### CONCURRING/DISSENTING OPINION


I fully concur in the majority's decision affirming the conviction in this case.

I also agree with the majority that the trial court's refusal to admit into evidence

as mitigation the testimony of Dr. John Hutson was error which requires a

reversal and a remand for re-sentencing. However, I dissent from the majority's

analysis of the constitutionality and sufficiency of the evidence to support the

aggravating circumstance, Tenn. Code Ann. § 39-13-204(i)(5), as amended in

1989.


### AGGRAVATING CIRCUMSTANCE (I)(5)

As the majority acknowledges, in this case we are presented with our first

opportunity to address the constitutionality of Tenn. Code Ann. § 39-13-

204(i)(5), which, as amended in 1989, provides that the murder was "especially

heinous, atrocious, or cruel in that it involved torture or serious physical abuse beyond that necessary to produce death."[1]

The defendant argues that the statutory language is unconstitutionally vague on its face. Relying on a decision of the Utah Supreme Court,[2] he urges this Court to construe "serious physical abuse" as physical abuse which is qualitatively and quantitatively different and more culpable than that necessary to accomplish the murder. Regardless of the construction of this language, he also claims that the evidence in this record does not support the aggravating circumstance.

The State responds that the statute is not vague on its face because it limits heinous, atrocious and cruel, to murders involving torture or serious physical abuse beyond that necessary to produce death. As the statute is constitutional on its face, the State contends that no further construction is required.

Resolution of this issue is guided by well-settled constitutional principles. The United States Supreme Court held in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), that the death penalty may not be imposed under sentencing procedures that create a substantial risk that the punishment will be inflicted in an arbitrary and capricious manner. Therefore, if a State wishes to authorize capital punishment, it is required by the federal constitution to tailor and apply its law in a manner that avoids the arbitrary and capricious

---

[1]Prior to the amendment in 1989, the statute provided "that the murder was especially heinous, atrocious, or cruel in that it involved torture or depravity of mind."

[2]State v. Tuttle, 780 P.2d 1203,1217 (Utah 1989).

infliction of the death penalty.  Godfrey v.  Georgia, 446 U.S. 420, 428, 100 S.Ct. 1759, 1764, 64 L.Ed.2d 398 (1980).

This constitutional responsibility requires states, as a first step, to adopt procedures to narrow the class of persons eligible for the death penalty.  Zant v. Stephens, 462 U.S. 862, 877 (1983).  Narrowing may be accomplished either by providing restrictive definitions of first-degree or capital murder or by utilizing aggravating circumstances at the sentencing hearing.  Lowenfield v. Phelps, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988).  In Tennessee, narrowing is accomplished by use of aggravating circumstances.  State v.  Middlebrooks, 840 S.W.2d 317 (Tenn.  1992).

Once a method of narrowing is chosen, the standards employed must be "clear and objective" and provide "specific and detailed" guidance which both channels the sentencer's discretion and makes rationally reviewable the process for imposing a sentence of death.  Godfrey v.  Georgia, 100 S.Ct.  at 1765, 446 U.S. at 428.  Indeed, the United States Supreme Court has recognized that a death penalty "system could have standards so vague that they would fail adequately to channel the sentencing decision patterns of juries with the result that a pattern of arbitrary and capricious sentencing like that found unconstitutional in *Furman* could occur."  Gregg v.  Georgia, 428 U.S. 153, 195, n.  46, 96 S.Ct.  2909, 2935, 49 L.Ed.2d 859 (1976).  Therefore, in Tennessee, aggravating circumstances, which serve as standards to guide the sentencing jury's discretion, must be sufficiently clear, objective, specific, and detailed to prevent the arbitrary and capricious imposition of the death penalty.   In this case, the defendant argues that the statutory aggravating circumstance, that the murder was especially heinous, atrocious, or cruel in that it involved torture or serious physical abuse beyond that necessary to produce death, without further

judicial construction, is unconstitutionally vague because it fails to inform the jury of what finding is necessary for imposition of the death penalty, and therefore leaves juries, and appellate courts with the type of open-ended discretion held invalid in Furman v. Georgia, supra. I disagree. Two cases decided by the United States Supreme Court provide guidance on this issue.

In Godfrey v. Georgia, supra, a Georgia jury was instructed in the language of the statutory aggravating circumstance -- "the offense was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim,"-- but its verdict only recited that the murder was "outrageously or wantonly vile, horrible or inhuman." Id., at 422, 100 S.Ct. at 1762. The Georgia Supreme Court affirmed the jury's verdict, finding only that the language was unobjectionable, and thus failed to rule whether the offense involved torture or an aggravated battery to the victim. Id., at 426-27, 100 S.Ct. at 1763-64. The U.S. Supreme Court reversed the death sentence stating:

> In the case before us, the Georgia Supreme Court has affirmed a sentence of death based upon no more than a finding that the offense was 'outrageously or wantonly vile, horrible and inhuman.' There is nothing in these few words, **standing alone**, that implies any inherent restraint on the arbitrary and capricious infliction of the death sentence. A person of ordinary sensibility could fairly characterize almost every murder as 'outrageously or wantonly vile, horrible and inhuman.'

Id., 446 U.S. at 428-29, 100 S.Ct. at 1764 (footnote omitted) (emphasis added).

More recently, in Maynard v. Cartwright, 108 S.Ct. 1853 (1988), the United States Supreme Court considered a vagueness challenge to an Oklahoma statutory aggravating circumstance. There, the jury imposed the death penalty upon a finding of two aggravating circumstances, one of which was the murder was "especially heinous, atrocious, or cruel." Initially, the Court

considered whether or not the statutory language, on its face, provided sufficient guidance to the jury. The Court concluded that, as in Godfrey v. Georgia, the bare language of the Oklahoma statute provided no guidance to the sentencing jury, because "an ordinary person could honestly believe that every unjustified, intentional taking of human life is "especially heinous." Maynard v. Cartwright, 108 S.Ct. at 1859. Moreover, the conclusion of the Oklahoma court that the evidence "adequately supported the jury's finding", did nothing according to the United States Supreme Court, "to cure the unfettered discretion of the jury and to satisfy the commands of the Eighth Amendment." Id. Although declining to delineate an exclusive limiting construction of the heinous, atrocious, or cruel aggravating circumstance, the Court implicitly approved as constitutionally acceptable a limiting construction which requires "some kind of torture or serious physical abuse." Id.

Accordingly, under Maynard v. Cartwright, Tenn. Code Ann. § 39-13-204(I)(5), which, as amended in 1989, provides that the murder was "especially heinous, atrocious, or cruel in that it involved torture or serious physical abuse beyond that necessary to produce death" is constitutionally acceptable. To base imposition of the death penalty upon this aggravating circumstance, the jury must find either torture, which has been defined in this State "as the infliction of severe physical or mental pain upon the victim while he or she remains alive and conscious,"[3] or "serious physical abuse beyond that necessary to produce death." The findings required by this statutory aggravating circumstance are both clear and specific. The aggravating circumstance channels and limits the jury's discretion and sufficiently eliminates the risk of arbitrary and capricious imposition of the death penalty. Therefore, in my opinion, no further judicial

---

[3]State v. Williams, 690 S.W.2d 517 (Tenn. 1985).

construction is needed, and the definitions suggested by the majority are superfluous.

Moreover, I disagree with the majority's conclusion that the evidence in this record is insufficient to support the aggravating circumstance.[4] In this case, the evidence, including the defendant's own statement, established that the 78 year-old victim was accosted and pushed into her car during a robbery attempt. Once inside the car, the defendant pulled out a knife and "cut" the victim. In pleading with him to stop, the victim addressed the defendant as "son." The defendant became very angry, replied "I'll give you a son," and then, in apparent retaliation for the victim's use of the term "son," raped her. When asked if the victim was alive when he raped her, the defendant said he was "quite sure she was alive because she told me she had never had sex before." Although the defendant denied any recollection of stabbing the victim, the medical examiner testified that the victim had suffered multiple stab wounds to her body, including penetrating wounds to the heart, lungs and liver. These wounds caused internal bleeding, and ultimately death, but according to the medical examiner, would not have resulted in instantaneous death. The medical examiner also noted defensive wounds on the victim's hands, and a tear in the victim's vaginal wall.

As previously stated, "torture" was defined in State v. Williams, supra, as "the infliction of severe physical or mental pain upon the victim while he or she remains alive and conscious." In this case, the defendant inflicted severe physical and mental pain upon the victim while she remained alive and conscious. The victim was alive when violently accosted, she pleaded with the

---

[4]Because a new sentencing hearing is required in this case, the question of the sufficiency of the evidence to support the aggravating circumstance is moot. See State v. Harris & Thompson, __ S.W.2d __ (Tenn. 1995)(Discussing resentencing hearings). Since the majority addressed the issue, however, I must express my disagreement with the majority's conclusion that the evidence is not sufficient.

-6-

defendant for mercy, but instead she no doubt experienced terror, when the defendant raped her as punishment for her use of the term "son." According to the defendant's own statement, she remained alive and conscious throughout the rape. Defensive stab wounds to her hands indicate that she struggled for survival as the defendant inflicted multiple penetrating stab wounds, which caused internal bleeding, and pain, but which did not cause immediate death. Though always utterly reprehensible, rape is not always torture. However, the facts and circumstances of this case, including the rape of the victim, in my opinion, establish torture as that term was defined in State v. Williams, supra. Compare State v. Cazes, 875 S.W.2d 253, 271 (Tenn. 1994); State v. Porterfield, 746 S.W.2d 441, 449-50 (Tenn. 1988). Therefore, I dissent from the majority's analysis of the constitutionality and sufficiency of the evidence to support the aggravating circumstance. In the result reached, and in all other aspects of the majority decision, I concur.

I am authorized to state that Justice Drowota concurs in this Concurring and Dissenting Opinion.

_____
E. RILEY ANDERSON, Chief Justice


CONCUR:

Drowota, J.