LABARGA, J.,
concurring.
I fully concur in the majority’s decision to reduce Yacob’s sentence to one of life in prison without the possibility of parole because death is not a proportionate sentence under the facts and circumstances of this case. I agree with the majority that this Court’s obligation to review each death sentence to assure it is proportionate emanates in part from section 921.141, Florida Statutes, and from the mandatory, exclusive jurisdiction conferred on this Court by the Florida Constitution. See art. V, § 3(b)(1), Fla. Const. However, I fully believe that our duty to examine each death sentence for proportionality arises in equal part from the law set forth by the United States Supreme Court that death as a penalty for first-degree murder “is reserved only for the most culpable defendants committing the most serious offenses.” See Miller v. Alabama, — U.S. -, 132 S.Ct. 2455, 2467, 183 L.Ed.2d 407 (2012). The Supreme Court has reiterated many times that “the death penalty is reserved for a narrow category of crimes and offenders,” see Roper v. Simmons, 543 U.S. 551, 568-69, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), thus there must be some mechanism by which the reviewing court can determine if this crime — measured not just by the fact that it is a first-degree murder but also by the extent of its aggravating circumstances— and this offender — measured not just by the fact that he or she is guilty of murder but in part by the mitigation present in the record — are within the narrow class of murders for which the death penalty is warranted. It is for this reason that we have long held that the death penalty in Florida is reserved for only the most aggravated and the least mitigated of first-degree murders. We explained in Jones v. State, 705 So.2d 1364 (Fla.1998), that “[t]he people of Florida have designated the death penalty as an appropriate sanction for certain crimes, and in order to ensure its continued viability under our *553 state and federal constitutions ‘the Legislature has chosen to reserve its application to only the most aggravated and unmitigated of [the] most serious crimes.’ ” Id. at 1366 (quoting State v. Dixon, 283 So.2d 1, 7 (Fla.1973)) (footnote omitted). This concept is in accord with Supreme Court precedent both before and after the issuance of the decision in Pulley v. Harris, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984).
The Supreme Court has emphasized many times that the concept of proportionality is central to the Eighth Amendment. See Graham v. Florida, 560 U.S. 48, 59, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010); see also Miller v. Alabama, — U.S.-, 132 S.Ct. 2455, 2463, 183 L.Ed.2d 407 (2012). That court has recognized that a comparative proportionality review on appeal “is intended to prevent caprice in the decision to inflict the [death] penalty.” Gregg v. Georgia, 428 U.S. 153, 203, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). The Supreme Court also recently reiterated that the Eighth Amendment’s prohibition against excessive sanctions “flows from the basic ‘precept of justice that punishment for crime should be graduated and proportioned’” to both the offender and the offense. Miller, 132 S.Ct. at 2463 (quoting Roper v. Simmons, 543 U.S. 551, 560, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (quoting Weems v. United States, 217 U.S. 349, 367, 30 S.Ct. 544, 54 L.Ed. 793 (1910))). Moreover, the Supreme Court continues to demand “individualized sentencing when imposing the death penalty.” Miller, 132 S.Ct. at 2467.
Any limitation on this Court’s proportionality review of death sentences attributed to Florida’s constitutional conformity clause, article I, section 17, Florida Constitution, does not conflict with the United States Supreme Court’s continuing adherence to the principles that the death penalty must result, if at all, from individualized sentencing, and that it not be imposed in an arbitrary and capricious manner, or in a disproportionate manner in light of the circumstances of the crime and the mitigation present in the case. Our proportionality review is but one component of this Court’s mandatory review of death sentences, and it allows the Court to make sure in every case in which the death penalty is imposed that the sentence is the result of reasoned individualized sentencing.
Our proportionality review also assists the Court in ensuring that the death penalty is not imposed in an arbitrary and capricious manner. The Supreme Court in Gregg explained that its earlier decision in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), “mandates that where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action.” Gregg, 428 U.S. at 189, 96 S.Ct. 2909. In examining Georgia’s death penalty statute, the Court in Gregg referred to the “safeguard” in Georgia’s capital sentencing that required all death sentences to be reviewed by the state supreme court to determine if the findings of aggrava-tors are supported by the evidence and “whether the sentence is disproportionate compared to those sentences imposed in similar cases.” Id. at 198, 96 S.Ct. 2909. The Supreme Court noted that “the proportionality requirement on review is intended to prevent caprice in the decision to inflict the penalty.” Id. at 203, 96 S.Ct. 2909. “In particular, the proportionality review substantially eliminates the possibility that a person will be sentenced to die by the action of an aberrant jury [or judge].” Id. at 206, 96 S.Ct. 2909 (bracketed material added).
*554 As the Court in Gregg reiterated, “There is no question that death as a punishment is unique in its severity and irrevocability” and is “an extreme sanction, suitable to the most extreme of crimes.” Id. at 187, 96 S.Ct. 2909. Thus, one important safeguard against imposition of the death penalty in an arbitrary or capricious manner in Florida’s death penalty scheme is this Court’s careful proportionality review— and it is an extremely important one. Such a review is necessary to ensure that the death penalty is limited to the most aggravated and least mitigated of murders, thus providing for individualized sentencing and avoiding arbitrary and capricious imposition of the death penalty in Florida. When this is ensured, it can be said that the punishment is proportionate to the crime.
In performing the proportionality review, this Court has explained:
“[W]e make a comprehensive analysis in order to determine whether the crime falls within the category of both the most aggravated and the least mitigated of murders, thereby assuring uniformity in the application of the sentence.” We consider the totality of the circumstances of the case and compare the case to other capital cases. This entails “a qualitative review by this Court of the underlying basis for each aggravator and mitigator rather than a quantitative analysis.” In other words, proportionality review “is not a comparison between the number of aggravating and mitigating circumstances.”
Williams v. State, 87 So.3d 187, 205 (Fla.2010) (quoting Offord v. State, 959 So.2d 187, 191 (Fla.2007)). As noted by the majority, in reviewing proportionality, the Court “will not disturb the sentencing judge’s determination as to ‘the relative weight to give to each established miti-gator’ where that ruling is ‘supported by competent substantial evidence.’ ” Blackwood v. State, 777 So.2d 399, 412-13 (Fla.2000) (quoting Spencer v. State, 691 So.2d 1062, 1064 (Fla.1996)). The Court will “review the weight the trial court ascribes to mitigating factors under the abuse of discretion standard.” Smith v. State, 998 So.2d 516, 527 (Fla.2008). The Court will “affirm the weight given an aggravator if based on competent substantial evidence.” Blake v. State, 972 So.2d 839, 846 (Fla.2007). “The weight to be given aggravating factors is within the discretion of the trial court, and it is subject to the abuse of discretion standard.” Buzia v. State, 926 So.2d 1203, 1216 (Fla.2006).
Thus, we review the existence of and weight to be given the aggravating factors and the mitigating factors through the lens of competent, substantial evidence and the trial court’s sound discretion. In the end, however, it is our evaluation of the interplay of those factors that must be brought to bear in determining if the ultimate punishment — death—fits the particular nature of the crime and the specific circumstances of the offender in each case. In addition, comparing the circumstances of the case under review to other cases in which the death penalty has been imposed and affirmed, or reversed, by this Court assists the Court in assuring uniformity in application of the penalty in Florida.
Even in Pulley, where the Supreme Court held that a comparative proportionality review is not indispensable to the constitutionality of a capital sentencing scheme, the Supreme Court noted that it had held several capital sentencing schemes that required such a review to be constitutional. The Court in Pulley explained:
Needless to say, that some schemes providing proportionality review are constitutional does not mean that such review is indispensable. We take statutes *555 as we find them. To endorse the statute as a whole is not to say that anything different is unacceptable. As was said in Gregg, “[w]e do not intend to suggest that only the above-described procedures would be permissible under Fur-man or that any sentencing system constructed along these general lines would inevitably satisfy the concerns of Fur-man, for each distinct system must be examined on an individual basis.”
Pulley, 465 U.S. at 44-45, 104 S.Ct. 871 (emphases added) (quoting Gregg, 428 U.S. at 195, 96 S.Ct. 2909 (omitting footnote)). Thus, even while holding that proportionality review is not indispensable, the Supreme Court reiterated that capital sentencing schemes containing such a requirement have been held constitutional. Therefore, this Court’s engaging in such a review in deciding whether to affirm a death sentence does not depart from the Supreme Court’s jurisprudence concerning the Eighth Amendment, and thus is not in conflict with the Florida Constitution’s conformity clause.
Justice Stevens noted in his concurrence in Pulley that in Gregg, Justice White focused on the proportionality review component of Georgia’s capital sentencing scheme “because it was a prominent, innovative, and noteworthy feature that had been specifically designed to combat effectively the systemic problems in capital sentencing which had invalidated the prior Georgia capital sentencing scheme.” Pulley, 465 U.S. at 55, 104 S.Ct. 871 (Stevens, J., concurring in part and concurring in the judgment). Justice Stevens also stated, “But observations that this innovation is an effective safeguard do not mean that it is the only method of ensuring that death sentences are not imposed capriciously or that it is the only acceptable form of appellate review.” Id. I recognize that in Florida, our proportionality review is not the only component of our mandatory review that ensures the death penalty is not imposed in an arbitrary and capricious manner, but just as the Supreme Court has characterized such a review in the past, it is an important safeguard endorsed by the Supreme Court.
In Walker v. Georgia, — U.S.-, 129 S.Ct. 453, 456, 172 L.Ed.2d 344 (2008), Justice Stevens observed, with respect to the denial of certiorari relief, that although Pulley held that the Eighth Amendment does not require proportionality review of every capital sentence, “it was not meant to undermine our conclusion in Gregg and Zant [v. Stephens, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983)] that such review is an important component of the Georgia scheme.”
In McCleskey v. Kemp, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987), decided after Pulley, the Supreme Court rejected McCleskey’s claim that a statistical study indicated that racial considerations entered into the capital sentencing determinations in Georgia, thus rendering his death sentence violative of the Eighth and Fourteenth Amendments. However, as to the Eighth Amendment claim, the Supreme Court reiterated that inherent in the Eighth Amendment is the principle “that punishment for crime should be graduated and proportioned to offense.” Id. at 300, 107 S.Ct. 1756 (quoting Weems, 217 U.S. at 367, 30 S.Ct. 544). In explaining why the Georgia capital sentencing scheme was not unconstitutional, the Court in McCleskey explained what it found to be important when it decided Gregg, stating:
Moreover, the Georgia system adds “an important additional safeguard against arbitrariness and caprice” in a provision for automatic appeal of a death sentence to the State Supreme Court. 428 U.S., at 198 [96 S.Ct. 2909]. The statute requires that court to review each sen *556 tence to determine whether it was imposed under the influence of passion or prejudice, whether the evidence supports the jury’s finding of a statutory aggravating circumstance, and whether the sentence is disproportionate to sentences imposed in generally similar murder cases. To aid the court’s review, the trial judge answers a questionnaire about the trial, including detailed questions as to “the quality of the defendant’s representation [and] whether race played a role in the trial.”
McCleskey, 481 U.S. at 303, 107 S.Ct. 1756 (emphasis added). The Supreme Court in McCleskey also noted, “On automatic appeal, the Georgia Supreme Court found that McCleskey’s death sentence was not disproportionate to other death sentences imposed in the State. The court supported this conclusion with an appendix containing citations to 13 cases involving generally similar murders.” Id. at 306, 107 S.Ct. 1756 (some emphasis supplied; citations omitted). At the same time, the McCleskey Court reiterated that “where the statutory procedures adequately channel the sentencer’s discretion, such proportionality review is not constitutionally required.” Id. (citing Pulley, 465 U.S. at 50-51, 104 S.Ct. 871). Thus, even given the holding in Pulley that comparative proportionality review is not required by the Eighth Amendment, the Supreme Court in McCleskey affirmatively recognized the fact that Georgia’s automatic appeal procedures provided for just such a review.
Justice Thomas reached a similar conclusion in his concurrence in Walker v. Georgia, 555 U.S. 979, 129 S.Ct. 481, - L.Ed.2d-(2008), referring to the comparative proportionality review undertaken by the Georgia Supreme Court in that case as “precisely the same proportionality review endorsed by this Court in McCleskey v. Kemp.” Id. at 985, 129 S.Ct. 481 (concurring in denial of certiorari relief). Justice Thomas explained, “The Georgia Supreme Court then reviewed petitioner’s death sentence to determine whether it was ‘excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.’ ” Walker, 555 U.S. at 986,129 S.Ct. 481.
“As the Court several times has made clear, [the Supreme Court is] unwilling to say that there is any one right way for a State to set up its capital sentencing scheme.” Spaziano v. Florida, 468 U.S. 447, 464, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984) (citing Pulley, 465 U.S. at 54, 104 S.Ct. 871). In Florida’s capital sentencing scheme, some form of proportionality review has been a staple of automatic appellate review for many years, and similar review has been a feature of other states’ capital sentencing schemes approved by the Supreme Court. Thus, inclusion of that safeguard against arbitrary imposition of the ultimate penalty in our mandatory review of death sentences cannot reasonably be said to conflict with the Supreme Court’s jurisprudence concerning evaluation of death sentences for conformance with the Eighth Amendment. This is true both in determining if the offense and the offender fall into that class for which the death penalty is appropriate and in ensuring that the penalty is imposed in a consistent manner that is not arbitrary and capricious.
Chief Justice Rehnquist, writing for the Court in Lowenfield v. Phelps, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988), stated: “To pass constitutional muster, a capital sentencing scheme must ‘genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.’ ” Id. at 244, 108 S.Ct. 546 (emphasis added) (quoting Zant, 462 *557 U.S. at 862, 877, 103 S.Ct. 2733). This statement was reiterated in Loving v. United States, 517 U.S. 748, 755, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996). Although the Supreme Court has made clear that a comparative proportionality review is not indispensable to the constitutionality of any specific state capital sentencing scheme, the Court has also recognized, even after its Pulley decision, that such a review can play an important part in automatic appellate review of death sentences to ensure that the death sentences are not being arbitrarily imposed.
I therefore conclude that even though proportionality review as it has been conducted in Florida is not expressly required by the Eighth Amendment, that fact provides no basis for this Court to conclude it is prohibited from such an evaluation under the conformity clause of our state constitution. As a Court, and as individual Justices, we are called upon to either affirm or reverse the most severe penalty that can ever be imposed on a human being. That is a responsibility that must be carried out in a manner that gives the Court, as a whole, and each Justice individually, moral and legal certainty that the defendant is deserving of the ultimate penalty when the facts of the crime, the aggravating circumstances, and the mitigating circumstances are carefully considered. This, in my view, is necessary to ensure that the penalty is imposed fairly and consistently throughout the State. Not insignificantly, examination of the sentences imposed on other defendants in similar circumstances, and either affirmed or reversed by this Court, aids our analysis not only because it promotes consistency in sentencing, but also because it is, in part, by this examination that we can discover the “evolving standards of decency that mark the progress of a maturing society.” See Troy v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) (plurality opinion); see also Miller, 132 S.Ct. at 2463 (noting that the concept of proportionality is viewed “less through a historical prism than according to ‘ “the evolving standards of decency that mark the progress of a maturing society”’” (quoting Estelle v. Gamble, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting Troy, 356 U.S. at 101, 78 S.Ct. 590) (plurality opinion))). The United States Supreme Court has announced no prohibition against a state reviewing court engaging in a proportionality review in mandatory appeals of death sentences. Instead, that Court has consistently referred to such review in favorable terms. Unless an edict is handed down by the Supreme Court declaring that comparative proportionality review is inconsistent with proper capital sentencing review, I will continue to make a proportionality review in every case in which I am called upon to place my judicial imprimatur on a sentence of death. It is my fervent hope that this Court will also continue to do so as a body.